UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

04 11658 RWZ C. A. No.

MAGISTRATE JUDGE _____

Chandrakant S. PANSÉ,
&
Anjali Pansé, a minor, through her father & Best Friend Chandrakant Pansé,
&
Mihir Pansé, a minor, through his father & Best Friend Chandrakant Pansé,
&
Ravi Pansé, a minor, through his father & Best Friend Chandrakant Pansé,       plaintiffs

v.

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED ___
LOCAL RULE 4.1 ___
WAIVER FORM ___
MCF ISSUED ___
BY DPTY. CLK. ___
DATE ___

Lindsay NORMAN, personally and as President,
   Massachusetts Bay Community College, Wellesley, MA (MBCC),
&
Paula GASTENVELD, personally and as Vice President, MBCC,
&
Laurie TAYLOR, personally and as employee of MBCC,
&
Ghazi DARKAZALLI, personally and as Dean, Science & Technology, MBCC,
&
Thomas SEBBAGH, personally and as Assoc. Dean, MBCC,
&
Trustees of Massachusetts Bay Community College,
&
Judith I. GILL, personally and as Chancellor of Higher Education of Mass.
&
Peter H. TSAFFARAS, personally and as Assoc. Vice Chancellor of Higher Ed.
&
Board of Higher Education, Commonwealth of Massachusetts,
&
John A. KING, Commissioner, Div. of Unemployment Assistance, Mass.,
&
Mitt ROMNEY, Governor, Commonwealth of Massachusetts,       defendants

COMPLAINT & Demand for Jury Trial

Parties

1. Plaintiff Chandrakant Pansé, *M.Sc.*, *M.A.*, *Ph.D.*, US citizen (hereafter only "plaintiff" for simplicity unless another plaintiff is specified), has been a tenured professor in a Science and Technology Division at defendant Massachusetts Bay Community College (hereafter MBCC), a state college in Wellesley, Massachusetts, till his illegal termination in Summer 2002. Since 1990 he has also been adjunct faculty at Boston University School of Medicine, where he teaches advanced subjects in a biotechnology program. Anjali Pansé, Mihir Pansé, and Ravi Pansé are his minor children. All plaintiffs reside in Newton, Middlesex county, Massachusetts.

2. Information regarding defendants, *infra*, is to the best of plaintiff's knowledge for times relevant for this action.

3. Both defendants Board of Higher Education of Massachusetts (hereafter 'BHE') and Trustees of MBCC (or any Committee or Subcommittee of the Board of Trustees, hereafter collectively 'Trustees') are 'employer' for faculty employed at MBCC pursuant to the Collective Bargaining Agreement ('CBA') by and between BHE and the faculty bargaining unit (although plaintiff's paychecks bore the signature of the Treasurer of the Commonwealth).

4. At MBCC, defendant Norman, a reject from Montana, found by Trustees and appointed by votes of Trustees and BHE, has been president since Mar. 1999 (and will retire shortly). Defendant Darkazali has been Dean of said Science and Technology Division since Jan. 2000,

defendant Sabbagh has been Associate Dean of said Division since Oct. 2000, and defendant Taylor has been Dean/Director of personnel at least since 1993.

5. Defendant Paula Gastenveld was Vice President at MBCC from Jan. 2001 to Nov. 2002, and has been employed in Florida since July 1, 2003.

6. Defendants Gill and Tsaffaras have been Chancellor and Associate Vice Chancellor, respectively, of Higher Education and employees of defendant BHE.

7. Defendant King has been Director, Division of Employment and Training, and now Commissioner, Division of Unemployment Assistance, of this Commonwealth, and defendant His Excellency Mr. Mitt Romney the Governor of this Commonwealth of Massachusetts.

Jurisdiction

8. Primary claim: Diversity Jurisdiction: All plaintiffs are citizens of Massachusetts, while Gastenveld, a defendant of primary significance for actions in Massachusetts while being a citizen of Massachusetts, is now a citizen of Florida, and Sabbagh, a defendant of primary significance for actions in Massachusetts, has been a resident of Rhode Island for a number of years. Further, plaintiff certifies that the amount in controversy herein far exceeds the statutory bar of $ 75,000 as of the date of this Complaint. Wherefore, this Court has jurisdiction pursuant to 28 U.S.C.A. § 1332.

9. Secondary or alternate claim: Subject Matter Jurisdiction: This Court has jurisdiction in this action as allegations herein are based primarily on actions of defendants, resulting in termination of plaintiff's tenured professorship, in violation of plaintiffs' rights pursuant to

(i) Title VI of the Civil Rights Act of 1964 and its implementing regulations, 42 U.S.C. 1983, and any other applicable statutes, applicable to MBCC because it receives Federal financial assistance; said actions of defendants having been carried out in spite of written warning by a federal attorney not to retaliate against and intimidate plaintiff, and further to take appropriate steps to prevent any hostile, intimidating or threatening actions against plaintiff, in view of a federal investigation of MBCC pursuant to 34 C.F.R. § 100,

(ii) plaintiffs' rights to due process pursuant to Fifth Amendment of Bill of Rights, made applicable to defendants herein by Amendment XIV,

(iii) plaintiff's protected property interest as a tenured professor pursuant to said Fifth Amendment,

(iv) plaintiff's protected liberty interest through his status in his profession pursuant to said Fifth Amendment, and

(v) plaintiff's free speech rights pursuant to the First Amendment.

10. Jurisdiction Over Parties & Venue Jurisdiction: All alleged wrongs by defendants herein were committed in the state of Massachusetts, in the course of being an employee of this Commonwealth or as a result of being such an employee. All plaintiffs and most of the defendants are residents of Eastern Massachusetts. Wherefore, this Court has jurisdiction over parties as well as venue jurisdiction.

11. Supplemental Jurisdiction: This Court has supplemental jurisdiction in this action regarding any and all pendent claims pursuant to Massachusetts laws. 28 U.S.C. 1367.

## ALLEGATIONS

12. Plaintiff believes, and therefore avers, each of the allegations *infra*.

13. Plaintiff was employed as associate professor to teach biotechnology in particular and science in general at MBCC from August 1993 to Spring 1996, when he was promoted to professor. Employer attempted to block plaintiff's tenure in February 1999. Plaintiff sued in state superior court pursuant Mass. G. L. c 149 § 185 (the 'whistleblower' statute) and rights pursuant to the First Amendment.[1] Plaintiff was awarded tenure in Summer 1999, and served until his fraudulent dismissal in Summer 2002.

14. Beginning in 1993, a professor Bruce Jackson and plaintiff designed and developed a new and highly innovative program in biotechnology to replace a non-working program then in existence at MBCC. Five new laboratory 'research' courses (later reduced to four), called 'Rotations' after similar curricula in many Ph.D. programs in biological sciences in this country,

---

[1] In this action, the Superior court denied provisions of plain statutory language as well as holdings of the 1st Circuit of Appeals regarding the whistleblower claims; the Office of the Attorney General of the Commonwealth attempted to obtain discovery long after deadline for conclusion of discovery pursuant to the court's Tracking Order, said deadline having been extended repeatedly, and then filed Reapplications pursuant to Mass. R. Civ. Practice Rule 33a. A Superior court judge, without a hearing, denied plaintiff's Motion to remove said fraudulent Reapplications. *Pansé* v *Van Winkle* et al., NOCV 99-287.

formed a critical component of said renovated biotechnology curriculum, very advanced level of instruction in sciences in other new courses being another critical part. Students, at least since 1994, not only have spent long hours, nights and weekends when the college was locked up, in the biotechnology program laboratory, but have also presented their work at research meetings. Not only was the college aware of the nature of said program, but obtained approval from BHE for it and made special arrangements to accommodate program needs. The National Science Foundation (NSF), an agency of the Federal government, has held up said community college program as a model to be emulated throughout the US.

15. Prof. Jackson, Principle Investigator (PI) and plaintiff, Co-PI, also secured Research Experience for Undergraduates (REU) / Research Opportunities for Minorities (ROMP) grants at MBCC from NSF, totaling over $ 740,000 in seven years.

16. As a result of their extraordinary efforts, Jackson and plaintiff have enjoyed the unique gratification of seeing most of their community college students, a high percentage of them minorities, get further and advanced degrees in biological sciences or excel in biotechnology industry. The prior president of MBCC advised the plaintiff that defendant BHE (or its predecessor, Higher Education Coordination Council) was highly complimentary of said biotechnology program. Plaintiff asserts that not many forms of social service can be better than such converting of single mothers and inner city minority youths into high-earnings taxpayers.

17. Further, after community colleges became eligible to nominate their students (2 per year,

each, as opposed to 4 per year for senior institutions) for the Congressional Goldwater Scholarships in Science and Mathematics, 10 students in the innovative Jackson-Pansé community-college-program won the honor in 7 years, a fete surpassed only by the likes of Princetons, MITs and Stanfords of this world.

18. During his employment, plaintiff, driven by a quest for academic excellence, had also been outspoken regarding the nature and level of education imparted by community colleges, and administrative issues, and dire needs for improvements in said areas. Defendant Norman, similarly to the MBCC president he replaced, had explicitly expressed his displeasure at said protected activities, failed in his duties to provide the plaintiff a secure atmosphere conducive for academic work, and engaged in undue retaliation.

19. In 2001, Jackson[2], PI, filed complaints with the Office for Civil Rights in US Department of Education for MBCC's refusal to fairly administer the federal grant and for retaliation, based on race, and an attorney in said Office issued her written warning, *supra*, covering the complainant and all other individuals involved. Plaintiff herein fully cooperated with an ensuing federal investigation.

20. MBCC proceeded to the most bizarre act of refusing to accept the federal monies for minority students. All defendants herein knew or should have known of said act, as the most

---

[2] Jackson, an African-American and also a tenured professor, was also terminated by MBCC in Summer 2002.

prominent newspaper in New England, the Boston Globe, covered it.

21. In Spring 2002, some students complained to the defendants Darkazalli and/or Sabbagh regarding the nature and certain practices in a rotation course being taught at MBCC by plaintiff. Instead of honoring plaintiff's demands to follow a student-grievance procedure, in existence at the college as the exclusive means to handle student complaints, and relying on said procedure particularly in light of the warning from Federal Office for Civil Rights to not intimidate and retaliate, *supra*, and the resulting necessity to stay away from even any appearance of retaliation, said defendants, under the supervision of, and/or in conspiracy with, defendants vice president and president, set out to employ said student complaints for their purposes of retaliation.

22. Plaintiff repeatedly explained to said defendant deans and vice president what the past practice in the rotation classes had been and how said practices had yielded wonderful results; said defendants acknowledged said explanations.

23. Defendants deans produced a fraudulent report from a purported investigation of said one class, among others, taught by plaintiff. While the most retaliation they could have reasonably come up with was either that plaintiff be asked to change the innovative and highly successful practices in the biotechnology program or that plaintiff be assigned courses about which there was no concern (i.e., classes other than biotechnology rotations), defendants Darkazalli and Gastenveld forwarded to the president a fraudulent recommendation, based partly on blatant lies, to dismiss plaintiff from employment at the college, all in furtherance of said retaliation and/or

their conspiracy to retaliate.

24. In order to satisfy requirements of the CBA, defendant president conducted a sham hearing for the purposes of termination of plaintiff's tenured appointment. For any hearing conducted by the employer for the dismissal of plaintiff from a tenured position, a matter of most extraordinary proportions, any political views of any of the defendants regarding the system of tenure notwithstanding, plaintiff enjoyed rights of due process, pursuant to Constitutions of both the U.S. and the Commonwealth. Defendant Norman, in desperate pursuit of retaliation, denied plaintiff due process, by failing to answer in advance queries regarding procedures, and/or not producing documents requested for defense, and/or by refusing to recuse himself from the hearing as a party in litigation with the plaintiff and thus incompetent to judge the plaintiff in an impartial manner, and/or by repeatedly not allowing adequate opportunity for plaintiff's counsel to prepare defense(s), and/or by repeatedly not allowing adequate opportunity for plaintiff to secure witnesses, and thus making a complete farce of said proceedings. Plaintiff's counsel could produce no witnesses at the so-called hearing at the college.

25. At said hearing at which plaintiff's conduct in only one specific biotechnology rotation, *supra*, was in question, and where defendant president, as the hearing officer, held,

> " ... the college is under a very real time line in terms of instructing its students that (sic) will start arriving here on September 3. The issue concerning Dr. Panse's termination, depending on the outcome of this hearing and the decision that I render based on what I hear during this hearing, may or may not determine whether Dr. Panse is an instructor in one of those classes beginning September 3,"

said defendant could at most instruct the deans or Vice President to assign the plaintiff undisputed non-rotation classes and had no rationale for recommending termination of plaintiff's employment to the employer.

26. Said defendant hearing officer at said proceedings at the college took no written notes of any testimonies at any time. In spite of undisputed evidence of plaintiff having engaged in nothing other than prior practices and that the college being aware of and having approved such practices and having enjoyed the unprecedented successes from said practices, and in absence of a single word in writing anywhere to the contrary in evidence and in absence of a single word in writing anywhere that the college had at any time asked plaintiff to change any of said practices, said defendant, in a matter of hours after conclusion of said hearing, communicated his decision to the Trustees to dismiss plaintiff from his tenured position.

27. An appeal to defendant Gill, as Chancellor of Higher Education of this Commonwealth, ensued pursuant to the CBA. Defendant Chancellor, however, proved to be not concerned regarding a matter most serious for academia in particular and the society in general, viz., dismissal of a tenured professor, and a professor of significant accomplishments no less, and said appeal was heard, in her stead, by defendant Tsaffaras.

28. Defendant Tsaffaras openly expressed surprise at the entire affair, professed to consult repeatedly with the defendant Chancellor. Defendants Tsaffaras and Gill knew or should have known that MBCC's charges against plaintiff were without merit and that plaintiff was in

essence offered no due process, and yet after Tsaffaras's huddle with defendant Taylor and counsel for college, continued the chain of retaliation by upholding the president. Defendant BHE did not overrule Tsaffaras and Gill due to lack of adequate supervision of said defendants.

29. To the extent that the Trustees can be construed as the employer, said Trustees, pursuant to their Bylaws, were required to examine the actions of the President in termination of a tenured faculty on the grounds of serious misconduct and upon conduct of due process, and had no provision in the Bylaws for not fulfilling said requirement. Further, a vote of the entire Board of Trustees was required for any action so grievous as termination of a tenured faculty due to serious misconduct. Defendant Trustees, having failed entirely on such counts, have been grievously derelict in their fiduciary duty to the college.

30. The president thus had no authority beyond forwarding a recommendation for termination of a tenured professor, but terminated the plaintiff.

31. Defendant Taylor, in furtherance of the retaliation and/or conspiracy to retaliate, denied plaintiff reasonable opportunity to recover certain of his personal and intellectual property from his office at the college, violating his privacy and resulting in significant loss of said property.

32. Defendant Taylor, in furtherance of the MBCC retaliation and/or conspiracy to retaliate, interfered with plaintiff's rights to unemployment benefits, and lied under oath in attempt to harm plaintiff at an appeal hearing. The Division of Employment and Training (now Division of

Unemployment Assistance) of this Commonwealth, recklessly or negligently failed to provide plaintiff his benefits for months even after a hearing officer upheld plaintiff's appeal[3].

33. Retaliatory and outrageous actions of defendants, in violations of the Constitution and the laws and federal warning, intentional and/or reckless and/or negligent, *supra*, in violation of rights, *supra*, caused plaintiff C. Pansé to suffer from grave humiliation in his profession, in his neighborhood, in the community and in the society, from apprehension of such humiliation, and resulted in infliction of emotional distress and resulting physical ill effects, and loss of much needed health insurance for dental and medical care; and caused Anjali Pansé, Mihir Pansé and Ravi Pansé, the plaintiff's three minor children, to suffer from much needed health insurance and hence from loss of dental and medical care, and emotional distress. Plaintiffs also suffered economic damages, due to causes such as, but not limited to, inability to refinance their mortgage when interest rates were at record lows, inability to have deferred compensation invested in equities when the stock markets were low, interest on loans, including credit card balances, and the resulting poor credit rating.

34. Plaintiffs assert that defendants Trustees and BHE were negligent in appointing Norman and in inadequate supervision of him, and that the Governor of this Commonwealth knew or should have known the misdeeds at MBCC and by Trustees and by BHE and by his Chancellor. The Governor owed plaintiffs a duty to uphold the Constitution and all laws and regulations of

---

[3]until a kind soul clear across the state in Pittsfield, away from the Eastern conspiracy, facilitated plaintiff's claims close to Christmas Eve of 2003, thereby saving the Division from further damage.

this Commonwealth as well as of this country through adequate insistence for such upholding on all high government bodies and all high officials of the state and through adequate supervision of said bodies and persons, and failed in said duty.

35. While the parties herein have been in arbitration pursuant to the CBA, the employer has done everything possible to prolong said arbitration to more than two years in continuation of the employer's retaliation and in an attempt to deny due process and justice to plaintiffs. (The employer agreed to dates in April and May 2004 for hearings only when the arbitrator in early 2004 declared that he did not want to see this matter in July 2004.) Further, arbitration pursuant to CBA does not preclude independent legal action.[4]

Count One

Civil Rights, Constitutional Rights, Assault, Battery,

C. Pansé v. Norman, Gastenveld, Darkazalli, Sabbagh, Gill, Tsaffaras, Trustees, BHE, Governor

36. Plaintiff C. Pansé repeats and incorporates by reference herein each and all allegations contained in paragraphs 1-35, *supra*, as if set forth separately.

37. Plaintiff alleges grievous violations of his civil rights, his First Amendment rights to free

---

[4] *Blanchette* vs. *School Committee of Westwood*, SJC-07452 (Apr. 1998), citing *Alexander* v. *Gardner-Denver Co.*, 415 U.S. 36, 43 (1974), *School Comm. of Brockton* v. *Mass. Comm'n Against Discrimination*, 377 Mass. 392, 399 (1979) and *Boston* v. *Mass. Comm'n Against Discrimination*, 39 Mass. App. Ct. 234, 238 (1995).

speech, his Fifth Amendment rights to due process and property interests and liberty interests, as well as his rights pursuant to the Massachusetts Constitution, Part the First, Declaration of Rights, Articles 1, 10 and 29, by defendants Norman, Gastenveld, Darkazalli, Sabbagh, Gill, Tsaffaras, Trustees, BHE and the Governor, individually or in conspiracy among some, also resulting in assault and battery at the hands of said defendants.

38. Wherefore, the plaintiff respectfully demands judgements against said defendants in order to be made whole again, including, but not limited to full reinstatement to his tenured position, back wages with interests, and compensation for economic damages and pain and suffering, costs and interest, as well as any lawful punitive damages.

## Count Two

### Negligence

### C. Pansé v. Division of Unemployment Assistance and Governor

39. Plaintiff C. Pansé repeats and incorporates by reference herein each and all allegations contained in paragraphs 1-35, *supra*, as if set forth separately.

40. Plaintiff alleges undue delay due to negligence by Division of Unemployment Assistance in paying his unemployment benefits, resulting in unnecessary distress and resulting in physical ill effects.

41. Wherefore, the plaintiff respectfully demands judgements against said defendants in order to be made whole again.

## Count Three

## Anjali Pansé, Mihir Pansé, and Ravi Pansé, Minors

## Through Their Father & Best Friend C. Pansé v. All Defendants

42. Plaintiffs repeat and incorporates by reference herein each and all allegations contained in paragraphs 1-35, *supra*, as if set forth separately.

43. Plaintiff claim rights to health insurance and other benefits through the state employment to their father and best friend, as enjoyed by dependants of all or almost all employees of this Commonwealth, and claim sufferings from distress and physical ill effects from said lack of said benefits.

44. Wherefore, the plaintiffs respectfully demands judgements against said defendants in order to be made whole again.

## Count Four

45. Plaintiffs repeat and incorporates by reference herein each and all allegations contained in paragraphs 1-35, *supra*, as if set forth separately.

46. Plaintiff respectfully demands judicial remedies, as this Hon. Court deems appropriate, such as a Court Order to the Governor to dismiss Trustees and appoint new and responsible Trustees for MBCC, towards the educational and noble goals of plaintiff as stated hereinabove.

## Demand for Justice

47. Plaintiffs respectfully demand justice as in Counts, *infra*.

## Jury Trial

48. Plaintiffs claim Trial by Jury on all counts so triable.

## Verification

I have prepared myself and read the foregoing and know the contents thereof, and the same is true of my own knowledge, except as to the matters stated therein on information and belief, and as to those matters I believe them to be true.

Respectfully submitted, this 26th day of July, 2004,

Chandrakant S. Pansé, *pro se*
34 Frances Street
Newton Highlands, MA 02461-1608
Tel. 617-527-9283

Anjali Pansé, a minor, through
her father & Best Friend Chandrakant Pansé

Mihir Pansé, a minor, through
his father & Best Friend Chandrakant Pansé

Ravi Pansé, a minor, through
his father & Best Friend Chandrakant Pansé

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
CHANDRAKANT S. PANSE et al.
PRO SE

**DEFENDANTS**
LINDSAY NORMAN, PERSONALLY AND AS PRESIDENT OF MBCC, et al.

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)
MIDDLESEX

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** NORFOLK
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c) ATTORNEYS** (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

**ATTORNEYS (IF KNOWN)**
OFFICE OF ATTORNEY GENERAL OF MASS.

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 850 Securities/Commodities/Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **HABEAS CORPUS:** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☒ 440 Other Civil Rights / ☐ 540 Mandamus & Other | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)
28 U.S.C. 1332, 42 U.S.C. 1983

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____   DOCKET NUMBER _____

DATE 7/26/2004
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. TITLE OF CASE (NAME OF FIRST PARTY ON EACH SIDE ONLY) __PANSE V. NORMAN__

2. CATEGORY IN WHICH THE CASE BELONGS BASED UPON THE NUMBERED NATURE OF SUIT CODE LISTED ON THE CIVIL COVER SHEET. (SEE LOCAL RULE 40.1(A)(1)).

   ___ I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   ✓ II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.   *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

   ___ III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

   ___ IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

   ___ V.   150, 152, 153.

3. TITLE AND NUMBER, IF ANY, OF RELATED CASES. (SEE LOCAL RULE 40.1(G)). IF MORE THAN ONE PRIOR RELATED CASE HAS BEEN FILED IN THIS DISTRICT PLEASE INDICATE THE TITLE AND NUMBER OF THE FIRST FILED CASE IN THIS COURT.

4. HAS A PRIOR ACTION BETWEEN THE SAME PARTIES AND BASED ON THE SAME CLAIM EVER BEEN FILED IN THIS COURT?
   YES      (NO)

5. DOES THE COMPLAINT IN THIS CASE QUESTION THE CONSTITUTIONALITY OF AN ACT OF CONGRESS AFFECTING THE PUBLIC INTEREST? (SEE 28 USC §2403)
   YES      (NO)

   IF SO, IS THE U.S.A. OR AN OFFICER, AGENT OR EMPLOYEE OF THE U.S. A PARTY?
   YES      NO

6. IS THIS CASE REQUIRED TO BE HEARD AND DETERMINED BY A DISTRICT COURT OF THREE JUDGES PURSUANT TO TITLE 28 USC §2284?
   YES      (NO)

7. DO ALL OF THE PARTIES IN THIS ACTION, EXCLUDING GOVERNMENTAL AGENCIES OF THE UNITED STATES AND THE COMMONWEALTH OF MASSACHUSETTS ("GOVERNMENTAL AGENCIES"), RESIDING IN MASSACHUSETTS RESIDE IN THE SAME DIVISION? - (SEE LOCAL RULE 40.1(D)).
   (YES)     NO

   A. IF YES, IN WHICH DIVISION DO ALL OF THE NON-GOVERNMENTAL PARTIES RESIDE?
      (EASTERN DIVISION)     CENTRAL DIVISION     WESTERN DIVISION

   B. IF NO, IN WHICH DIVISION DO THE MAJORITY OF THE PLAINTIFFS OR THE ONLY PARTIES, EXCLUDING GOVERNMENTAL AGENCIES, RESIDING IN MASSACHUSETTS RESIDE?
      EASTERN DIVISION     CENTRAL DIVISION     WESTERN DIVISION

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _____
ADDRESS _____
TELEPHONE NO. _____

(Cover sheet local.wpd - 11/27/00)