UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| CHANDRAKANT S. PANSE et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | C.A. No. 04-CV-11658-RWZ |
| v. | ) | |
| | ) | |
| LINDSAY NORMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION
TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

I.    **Introduction**

Plaintiff Chandrakant S. Pansé ("Pansé") has brought this pro se action pursuant to 42 U.S.C. §§ 1983 and 1988 seeking damages for the August 2002 termination of his employment as a tenured professor at the Massachusetts Bay Community College ("the College")and its consequences. Pansé names as defendants various officials of the College, the Board of Higher Education, the Division of Unemployment Assistance, as well as the Governor of Massachusetts (hereinafter collectively referred to as "the defendants"). Pansé enumerates nine counts for which he alleges that defendants are liable, in both their official and individual capacity, namely:  assault and battery (Counts

−2−

One, Five, and Eight); severe emotional distress (Count
Two); due process and free speech violations (Counts Three
and Eight); defamation (Count Four); conversion and
invasion of privacy (Count Six); and negligence (Count
Seven).[1]

This Court should dismiss Pansé's action or grant
summary judgment to the defendants.  Sovereign immunity and
the language of 42 U.S.C. § 1983 bar any action for damages
against any of the defendants in their official capacity.
Pansé's due process and free speech claims against the
defendants in their individual capacity are without merit
because Pansé received all due process to which he was
entitled and because his speech was not of a kind protected
by the First Amendment nor was it close enough in time to
infer retaliation.  Even if there were merit to Pansé's
constitutional claims against the defendants in their
individual capacity, defendants would be entitled to
qualified immunity.  Pansé's remaining causes of action
allege violations of <u>state</u> law over which this Court should
decline to exercise jurisdiction for reasons of judicial
economy, convenience, and fairness to the litigants.

---

[1]    Count Nine is not a cause of action but rather a
prayer for relief.

–**3**–

## II.  Underlined Facts

For the purposes of this motion, the defendants submit that the following numbered material facts are not in dispute:

1.  In 1993, Pansé was hired by the College as an associate professor of biotechnology.[2]

2.  In 1996, Pansé was promoted to the rank of professor.[3]

3.  In 1999, Pansé received tenure.[4]

4.  In March 2002, the College commenced an investigation of Pansé in response to a number of student complaints.[5]

5.  As a result of this investigation and in conformity with the Collective Bargaining Agreement (the "CBA"), Article XV, 15.02(1),[6] defendant Paula Gastenveld, the Vice President for Academic Affairs of the College, recommended to the President of the College that Pansé be dismissed from employment.[7]

---

[2]    Amended Complaint, ¶ 13.
[3]    Id.
[4]    Id.
[5]    Affidavit of Laurie Taylor.
[6]    A copy of the relevant portion of the CBA is annexed to Pansé's Amended Complaint.
[7]    Affidavit of Laurie Taylor.

–**4**–

6.   On or about May 16, 2002, Pansé was provided a written compilation of the investigation.

7.   On May 28, 2002, pursuant to the CBA, Article XV, 15.02(2), Norman notified Pansé that he was being recommended for dismissal.  Attached was a copy of the investigation and the recommendation of Gastenvald with an offer to discuss the matter.  Pansé declined the offer.**8**

8.   On May 31, 2002, pursuant to the CBA, Article XV, 15.02(3), Norman notified Pansé of the formal charges and that he was recommending dismissal.  Pansé was again provided a copy of the investigation report.  The formal charges stated that Pansé had failed to teach, supervise, or be present during scheduled laboratory classes; rescheduled or reduced course times without authorization; and failed to provide instruction consistent with the course description.**9**

9.   On July 29, 2002, Pansé was afforded a formal hearing, pursuant to the CBA, Article XV, 15.02(4)-(7). This hearing lasted two days, during which time Pansé was represented by counsel, had the opportunity to call witnesses and present testimony as well as to confront and

---

**8**    Id.
**9**    Id.; Union Appeal on behalf of Dr. Chandrakant Pansé,

–**5**–

cross-examine adverse witnesses.[10]

10.  On August 2, 2002, pursuant to the CBA, Article XV, 15.02(8), Norman notified Pansé that he had found the charges substantiated and that Pansé was to be dismissed.[11]

11.  Pursuant to the CBA, Article XV, 15.02(8), Pansé appealed his dismissal to defendant Judith I. Gill, the Chancellor of Higher Education, who, on August 30, 2002, denied Pansé's appeal and upheld his dismissal.[12]

12.  Pursuant to the CBA, Article XV, 15.02(8)(b), the Massachusetts Community College Council/MTA ("the Union") initiated arbitration on Pansé's behalf.[13]

13.  After an extensive hearing, on November 9, 2004 the Arbitrator issued an Opinion and Award, remanding the matter to the President of the College for reassessment of the decision while retaining jurisdiction.[14]

14.  Interim President of the College Andrew Scibelli, who followed Norman as President of the College, reassessed the decision.  He decided to reaffirm it.

---

[10]  p. 3.  A copy of the Appeal is annexed as Exhibit A. Affidavit of Laurie Taylor.

[11]  Id.

[12]  Id.

[13]  Id.

[14]  Union Appeal on behalf of Dr. Chandrakant Pansé, p. 4. Exhibit A.

–**6**–

15.  On December 15, 2004, an appeal was taken
pursuant to the CBA, Article X, 10.06(E).  The Union seeks
Pansé's reinstatement with seniority, full back pay and
benefits.  This appeal is pending.**15**

III. <u>**Argument**</u>

    A.    **Sovereign Immunity And The Language Of 42 U.S.C.
        § 1983 Bar Any Action Against The Defendants In
        Their Official Capacity And Against The Division
        Of Employment Insurance.**

As made clear from the caption of his Amended
Complaint, Pansé has brought suit against the defendants in
both their personal and official capacity.  The latter is
barred by both sovereign immunity and the language of 42
U.S.C. § 1983.

A state can only be successfully sued for damages in
federal court if Congress has overridden, or the state has
waived, sovereign immunity as conferred upon it by the
Eleventh Amendment.  <u>Kimel v. Florida Bd. of Regents</u>, 528
U.S. 62, 75-76 (2000).  Congress has not overridden the
Commonwealth's Eleventh Amendment immunity and the
Commonwealth has not waived it.

The fact that Pansé has not sued the Commonwealth, but
rather its officials in their official capacity does not
circumvent the Eleventh Amendment.  The sovereign immunity

---

**15**   <u>Id.</u>

–**7**–

clause of the Eleventh Amendment bars the rendering of any

judgment against a state, a state agency, or state

officials in their official capacity because any such

judgment would have to be paid from state funds.  <u>Quern v.</u>

<u>Jordan</u>, 440 U.S. 332, 337 (1979); <u>Fresenius Medical Care</u>

<u>Cardiovascular Resources, Inc. v. Puerto Rico and the</u>

<u>Caribbean Cardiovascular Center Corp.</u>, 322 F. 3d 56, 63

(1st Cir. 2003).

Quite apart from the bar of sovereign immunity, state

officials in their official capacity cannot be subject to

suit under 42 U.S.C. § 1983.  Section 1983 provides in

relevant part that:

> Every <u>person</u> who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State ... subjects, or causes to be
> subjected, any citizen of the United States
> ... to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress.

42 U.S.C. § 1983 (emphasis added).  The Supreme Court has

definitively held that, as a matter of statutory

interpretation, states are not "persons" and, therefore,

not subject to suit under section 1983.  <u>Will v. Michigan</u>

<u>Dep't of State Police</u>, 491 U.S. 58, 70-71 ( 1989).

Similarly, state officials, acting in their official

–8–

capacity, are deemed not to be "persons" for that purpose. Rosario-Urdaz v. Rivera-Hernandez, 350 F.3d 219, 221-22 ( 1st Cir. 2003). Accordingly, Pansé's claims against state officials in their official capacity must be dismissed or summary judgment entered in their favor.

> **B.   Defendants Are Not Liable In Their Individual Capacity Because They Did Not Engage In Any Unconstitutional Conduct.**

In Count Three, Pansé claims that the defendants are individually liable for having violated his Fifth and First Amendments to due process and free speech, respectively.[16] These claims are without merit because Pansé received all due process to which he was entitled and because his speech was not of a kind protected by the First Amendment.

> **1.   *Pansé Received All Due Process To Which He Was Entitled.***

The sole violation of due process against any defendant in his individual capacity is contained in Count III[17] and would seem to refer, without specification, to defendant Lindsay Norman, as President of the College. He is alleged to have denied Pansé due process

> by failing to answer in advance queries regarding procedures to be followed at the

---

[16]   Amended Complaint, ¶ 59.
[17]   Id., ¶ 58.

−**9**−

> [termination] hearing, and/or not producing
> documents requested by the defense, and/or by
> not allowing adequate opportunity for
> plaintiff to secure witnesses, and/or by
> refusing to recuse himself from the hearing
> as a party in litigation with the plaintiff
> and thus incompetent to judge the plaintiff
> in an impartial manner, and in other ways
> such as not admitting evidence favorable to
> plaintiff, making a complete farce of said
> hearing.[18]

Pansé had adequate opportunity to call witnesses.
Pansé was not entitled to answers to interrogatories,
production of documents, or other discovery under either
the CBA or the due process clause.  The defendants,
nonetheless, did provide Pansé with many documents.[19]

Pansé suggests that he would have benefited from
additional time and discovery.  This is perhaps always
true.  However, the due process clause

> does not require every procedural protection
> that might help; it simply requires that a
> private person have a basically fair
> opportunity to convince the decision maker,
> by presenting proofs and arguments and
> evidence and replies to the arguments of
> others.

Newman v. Burgin, 930 F.3d 955, 961 (1st Cir. 1991).

Pansé was given a fair opportunity to convince the
decision maker.  He was notified of the charges by letter
of May 31, 2002.  He had two months time in which to

---

[18]    Id., ¶ 27.
[19]    Affidavit of Laurie Taylor.

–**10**–

prepare for the July 29, 2002 formal termination hearing.[20]
The hearing lasted two days,[21] ample time for Pansé to
present any proofs, arguments, and evidence with which to
contest his termination.

Pansé suggests that Norman, as President of the
College, was too biased to act as decision maker.  However,
an employee's due process rights are not violated simply
because the decision maker is the employer.  Feliciano-
Angulo v. Rivera-Cruz, 858 F.2d 40, 43 (1st Cir. 1988).
Pansé would have to allege facts to overcome the
"presumption that state administrators are fair and honest"
to convince the court of a risk of actual bias."  O'Brien
v. DiGrazia, 544 F.2d 543, 547 (1st Cir. 1976).  The mere
fact that the decision maker was the person who also
instigated and investigated the matter would not be not
enough to render him ineligible.  Id.  This is justified by
the fact that a pre-termination hearing is not a final
determination but rather an occasion for the employer to
consider "the existence of disputes about facts and
arguments about cause and effect."  Id.  Indeed, as set
forth in the CBA, Pansé had the right to appeal to the
Chancellor from Norman's decision as President, and from
there to initiate arbitration by the American Arbitration
Association.  CBA, Article XV, 15.02.  Pansé has exercised

---

[20]   Id., ¶ 27.
[21]   Id., ¶ 27.

–**11**–

these rights.**22**

### 2.    *Pansé's Speech Was Not Of A Kind Protected By The First Amendment.*

Pansé claims that his August 2002 termination of employment violated his right to free speech under the First Amendment.  He claims that his termination was in retaliation for what he said about "the nature and level of education imparted by community colleges," "administrative issues," and the "dire need for improvements."**23**  However, such speech was not of a kind protected by the First Amendment.

A public employee disciplined for speech or expressive conduct has a viable retaliation claim under the First Amendment <u>only</u> if the speech or expressive conduct touches on "a matter of public concern." <u>Connick v. Myers</u>, 461 U.S. 138, 146 (1983); <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968).  Accordingly, when an employee speaks upon matters of personal interest, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency...in reaction to the employee's behavior." <u>Connick</u>, 461 U.S. at 147.

---

**22**    Award of the Arbitrator.  A copy of the Award is annexed as Exhibit B.  Affidavit of Laurie Taylor.

–**12**–

For if it were otherwise, anything said "would plant the seed of a constitutional case." Connick, 461 U.S. at 149.

Whether speech or expressive conduct is a matter of public concern is not for a jury but for a Court to decide as a matter of law. Connick, 461 U.S. at 147-148; Hennessy v. City of Melrose, 194 F.3d 237, 246 (1st Cir. 1999). The question must be resolved on the basis of the "content, form, and context" of the speech as revealed by the record as a whole.

In order to qualify as a matter of public concern, the content of the speech or expressive conduct must "provide members of society with information necessary to make informed decisions about government operations, to disclose public misconduct, or to inspire public debate on a matter of significant public interest." Meaney v. Dever, 326 F.3d 283, 289 (1st Cir. 2003) citing O'Connor v. Steeves, 994 F.2d 905, 913 (1st Cir. 1993). Pansé claims that his criticism of the College and its administration is a matter of public concern, as demonstrated by an unidentified article in the Boston Globe.**24** The only article to be found which mentions Pansé with relation to the College is one

---

**23**   Amended Complaint, ¶¶ 18 & 59.
**24**   Id., ¶ 20.

−**13**−

which appeared some three years prior to the termination of Pansé's employment.  It did not report on any matter of public concern but rather the mere fact that Pansé and a colleague, Dr. Bruce Jackson, had brought suit against the College.**25**

Pansé vaguely refers to other, equally dated and self-serving communications, beginning in about 1993.**26**  They, too, do not relate to any issue of public importance but only to how he claims the College treated him, Dr. Jackson, and the "innovative" Jackson-Pansé community-college program, which he believed to have been "surpassed only by the likes of [the] Princetons, MITs and Stanfords of this world."**27**

The "form and context" of Pansé's communication, as well as the content, were not of a kind calculated to inform or generate debate on a matter of public concern. Even if a court were to construe Pansé's communications as related to a matter of public concern, Pansé can produce no evidence that the termination of his employment was causally connected to those communications.

---

**25**    A copy of the <u>Boston Globe</u> article is attached as Exhibit C.
**26**    Amended Complaint, ¶ 13.
**27**    <u>Id.</u>, ¶ 17.

–**14**–

The defendants acted to terminate Pansé's employment only after the receipt of independent student complaints and a subsequent investigation which substantiated those complaints and made clear Pansé's dereliction of duty. The timing of the termination of Pansé's employment cannot, as a matter of law, support an inference of retaliatory termination.

A causal relationship may be inferred when an adverse employment action follows closely on the heels of protected activity, and such an inference is weakened and will collapse over time. Oliver v. Digital Equip. Corp., 846 F.2d 103, 110 (1st Cir. 1988). A prima facie case of retaliation cannot be established "unless the termination is very closely connected in time to the protected activity, [otherwise] the plaintiff must rely on additional evidence beyond temporal proximity to establish causation" Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999)(emphasis in original); see Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)(per curiam)(temporal proximity must be close); Figgous v. Allied/Bendix Corp., 906 F.2d 360, 362 (8th Cir 1990)(directed verdict for employer where only evidence was that employee had been fired one to two years after

–**15**–

employer learned of his discrimination complaint); Oliver
v. Digital Equip. Corp., 846 F.2d 103, 110-111 (1st Cir.
1988)(no causation shown when firing occurred more than two
years after filing of charge); Cooper v. North Olmsted, 795
F.2d 1265, 1267, 1272 (6th Cir. 1986)(causation not shown
when firing occurred four months after filing of charge).

    **C.   Defendants Are Entitled To Qualified Immunity.**

    Even if the defendants were determined to have engaged
in unconstitutional conduct, they would be entitled to
qualified immunity and not individually liable.  The
doctrine of qualified immunity protects public officials
from civil liability pursuant to 42 U.S.C. § 1983 "so long
as they `acted reasonably under settled law in the
circumstances,'" Veilleux v. Perschau, 101 F.3d 1, 2 (1st
Cir. 1996)(per curiam) quoting Hunter v. Bryant, 502 U.S.
224, 228 (1991)(per curiam), or, in other words, so long as
objectively reasonable officials could have believed that
their conduct did not violate the plaintiff's
constitutional rights, in light of clearly established law
and the information possessed by the defendants at the time
of the allegedly wrongful conduct.  Anderson v. Creighton,
483 U.S. 635, 639 (1987); Wood v. Clemons, 89 F.3d 922, 927
(1st Cir. 1996); St. Hilaire v. City of Laconia, 71 F.3d

-16-

20, 24 (1st Cir. 1995); Hegarty v. Somerset County, 53 F.3d
1367, 1373 (1st Cir. 1995).

The defendants did nothing which they could have
believed was a violation of Pansé's constitutional rights,
clearly established or otherwise.  Even if it could be
argued that the defendants should have provided Pansé with
better written advance notice as to what was expected, and
then only terminated Pansé after the imposition of
progressive discipline,[28] any such failure would not have
been a violation of a clearly established constitutional
right.  Consequently, Pansé's claim for damages against the
defendants in their individual capacity cannot succeed any
more than his claim against them in their official
capacity.

   **D.  This Court Should Decline To Exercise Pendant
        Jurisdiction Over Pansé's Pendant State Law
        Claims.**

In the absence of a viable federal cause of action,
this Court should decline to exercise its supplemental or
pendant jurisdiction over Pansé's state law claims[29].  28

---

[28]  Exhibit B, p. 18.

[29]  The state law claims are for:  assault and battery
      (Counts One, Five, and Eight); severe emotional
      distress (Count Two); defamation (Count Four);
      conversion and invasion of privacy (Count Six); and
      negligence (Count Seven).

–**17**–

U.S.C. § 1367(c)(the district court may decline to exercise
supplemental jurisdiction if it has dismissed all claims
over which it has original jurisdiction).  The
justification for pendant jurisdiction has been held to lie
"in considerations of judicial economy, convenience, and
fairness to litigants." United Mine Workers v. Gibbs, 383
U.S. 715, 726 (1966).  When all the federal claims have
been dismissed before trial, pendant jurisdiction is deemed
would be "inappropriate." Id.; accord, Williams v. Jones,
11 F.3d 247, 255 (1st Cir.1993); Paris v. U.S. Dept. of
Housing and Urban Development, 988 F.2d 236, 240 (1st
Cir.1993); Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 478
(1st Cir.1993).

In this case, the appeal which the Union has filed on
Pansé's behalf with the Arbitrator is still pending.  It
seeks much of the same relief Pansé is requesting here,
namely reinstatement with seniority, full back pay and
benefits.**30**  Pansé, himself, recognizes the relationship of
the two actions, stating in his Amended Complaint that he
"will need to further amend his Amended Complaint upon
conclusion of the arbitration process...."**31**  Moreover, at

---

**30**    Exhibit A, p. 1.
**31**    Amended Complaint, ¶ 50.

–**18**–

the conclusion of the arbitration process, both parties

have recourse to appeal the arbitrator's award to state

court.  G.L. c. 150C, § 11.  In short, the posture of this

case make particularly appropriate that this Court decline

jurisdiction in the interest of judicial economy,

convenience, and fairness.

## IV.    Conclusion

Pansé's action should be dismissed or summary judgment

granted the defendants in both their official and

individual capacity for the reasons set forth above.

> LINDSAY NORMAN, PAULA GASTENVELD,
> LAURIE TAYLOR, GHAZI DARKAZALLI, THOMAS
> SABBAGH, the MBCC BOARD OF TRUSTEES,
> JUDITH I. GILL, PETER H. TSAFFARAS, the
> MASSACHUSETTS BOARD OF HIGHER
> EDUCATION, JOHN A. KING, MITT ROMNEY,
> ANDREW SCIBELLI, and HAIDEE MORRIS, ,
> in their individual and official
> capacities,
>
> By their Attorney,
>
> THOMAS F. REILLY
>
> ATTORNEY GENERAL
>
>
> /s/Charles M. Wyzanski_____
> Charles M. Wyzanski
> BBO # 536040
> Assistant Attorney General
> One Ashburton Place
> Boston, Massachusetts 02108
> 617-727-2200

−19−