

# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108-1598

THOMAS F. REILLY
ATTORNEY GENERAL

(617) 727-2200
www.ago.state.ma.us

January 11, 2005

Lisa Urso
Courtroom Clerk for Judge Zobel
United States District Court for
    the District of Massachusetts
One Courthouse Way; 2nd Floor, Suite 2300
Boston, Massachusetts 02210

    Re:   Chandrakant S. Panse et al. v. Lindsay Norman, et al.
           C.A. NO. 04CV11658 RWZ

Dear Lisa:

    I am enclosing Exhibits A-C which relate to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment which was electronically filed on Thursday, January 6, 2005. I attempted to send the exhibits electronically, however I was only able to send one page.

    If you would like to speak to me concerning this, please contact me at (617) 727-2200, Ext. 3346.

    Thank you.

                                  Very truly yours,

                                  Lucinda MacDonald
                                  Secretary to Charles M. Wyzanski
                                  Assistant Attorney General

Enclosure

# Exhibits A-C
# Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment

## which relate to

# Chandrakant S. Panse, et al. v. Lindsay Norman, et al.
## C.A. NO. 04CV11658 RWZ

A

Case 1:04-cv-11658-RWZ    Document 20    Filed 01/13/2005    Page 3 of 15

**AMERICAN ARBITRATION ASSOCIATION**
Before Michael Stutz, Arbitrator

In the Matter of Arbitration between

Massachusetts Community College
Council/MTA/NEA

And

Board of Higher Education
(Massachusetts Bay Comm. College)

Dr. Chandrakant Pansé Dismissal
AAA #: 11 390 02407 02

## APPEAL OF THE MCCC/MTA/NEA PURSUANT TO ARTICLE 10.06(E) OF THE COLLECTIVE BARGAINING AGREEMENT

**I.  Introduction**

On November 9, 2004 the arbitrator issued an opinion and award in the arbitration over the dismissal of Dr. Chandrakant Pansé ("Dr. Panse" or the "grievant"), a tenured professor of biotechnology at the Massachusetts Bay Community College, finding for the grievant. Consistent with the procedure laid out in the collective bargaining agreement (CBA) between the Board of Higher Education ("Employer") and the Massachusetts Community College Council/MTA ("MCCC" or "Union"), the arbitrator remanded the case to the President of the College for reassessment of the original decision while retaining jurisdiction. The President had thirty (30) days in which to issue a decision. On December 8, 2004, the interim President of the College issued a three paragraph decision affirming the prior decision of the President. The Union hereby files this appeal seeking an award from the arbitrator reinstating Dr. Panse forthwith with seniority, full back pay and benefits.

1

II.     Procedural history and relevant background facts

Dr. Pansé was a tenured professor of Biotechnology at the Massachusetts Bay Community College (MassBay) until his dismissal in 2002. Based upon the recommendation of the Dean of Science, Engineering and Advanced Technology and the Vice President of Academic Affairs, the President of MassBay served Dr. Pansé with a notice of intent to dismiss on May 28, 2002. EX. 3.[1] The MCCC challenged the dismissal through the grievance procedure in the CBA. JX. 1. As mandated by the CBA, President Norman held a hearing over whether to uphold the recommended dismissal of Dr. Pansé. By letter dated August 2, 2002, Dr. Norman notified Dr. Pansé of his decision to accept the recommendation of dismissal. JX. 5. In accordance with the contractual grievance procedure, the Association appealed the dismissal decision to the Chancellor of the Board of Higher Education. JX. 6 and 3. By letter dated August 30, 2002, the Board of Higher Education upheld President Norman's decision to dismiss Dr. Pansé. JX. 4. The Association demanded arbitration pursuant to Step Three of the grievance procedure, Art. 10.06. JX. 2.

There were a total of twelve days of hearings in this matter from January 28, 2003 until May 7, 2004. In the course of the hearings, the parties requested the arbitrator to issue an opinion on the threshold interpretation to establish the standard of proof to be applied to the dismissal. The arbitrator issued an opinion on the standard of review and held as follows:

> By providing for both arbitration and for just cause in their Agreement, the parties intended that employees be dismissed for just cause, and intended further that employees have a real review at arbitration. At least this is the path chosen by Arbitrator O'Brien, a path that I am obliged to follow, as

---

[1] Please note that references to the transcript and exhibits are as follows: Transcript: TR. __ (Day); Employer Exhibits: EX - __; Union Exhibits: UX - __; and Joint Exhibits: JX - __.

2

explained above. For these reasons, the standard of review of Dr. Panse's dismissal will be the Association's two tiered approach as set forth in its proposed issue:

1. whether there was just cause of the dismissal and, if so, the grievance will be dismissed;

2. if there was no just cause for the dismissal, was the President's decision to dismiss the grievant arbitrary, capricious or unreasonable based on clear and convincing evidence.

There were five charges brought by the Employer against the grievant to justify the dismissal. These five charges were: (1) absence from the lab during scheduled class times; (2) jeopardizing student safety; (3) improperly rescheduled class time; (4) improperly assigning students to teach or supervise other students and (5) failure to provide instruction consistent with the course description. JX. 5.

In the opinion and award, the arbitrator summarized the evidence presented, summarized the arguments of the parties, analyzed the evidence on the five charges and determined that the Employer did not have just cause to terminate the grievant. The arbitrator then addressed the second prong enunciated in the decision on the standard or review; the arbitrator wrote as follows:

> Having concluded that there was no just cause to terminate the grievant; we next consider whether the President's decision was arbitrary, capricious or unreasonable, that is whether President Norman had reason to terminate the grievant, or, rather whether the decision was arbitrary, capricious or unreasonable.
>
> Although President Norman testified at the arbitration hearing, neither his testimony nor his documents persuasively established a basis to fire the grievant. President Norman was convinced that the grievant's conduct could not be changed. He testified, "I was left with no other conclusion than to assume that the employee had no intention of changing his behavior." Yet there was no evidence of prior discipline or written directive.

3

The purported reasons for discharging the grievant amounted to a disagreement over the long-standing design of the Rotation II lab. The administration brought these charges against the grievant alleging that fundamental aspects of the program, including the flexible lab times, student mentoring, and independent research, amount to misconduct by the grievant. Even without the adversarial atmosphere between employee and the Employer that is present in this case, such discipline is suspect.

Management has the right to direct the work force and to make reasonable work rules. It can certainly require a school employee to be present in the lab at all times. However, during the spring 2002 semester of Rotation II that is at issue, there was no written policy on this subject. Rather, there were changing requirements by management in the past; a written policy was not issued until the end of the semester in May. Therefore, the attempt to discipline the grievant for absence from the lab before the written policy requiring such presence was communicated to the faculty was obviously unfair. The same is true of the discipline of the grievant for using student mentors and flexible hours in the lab. The grievant's resistance to changing his open lab policy was not cause for discipline considering the litigation that was pending and his prior teaching practices.

Considering all of the evidence in the record, along with the litigious atmosphere between the grievant and his supervisors and the absence of notice to the grievant to change his course or face discipline, the Presidents' decision to fire the grievant was arbitrary, capricious or unreasonable based upon clear and convincing evidence.

As remedy, pursuant to the Agreement, the matter is referred back to the President of the College for reassessment, and the undersigned will retain jurisdiction.

The decision on reassessment was made by Interim President Dr. Andrew Scibelli. On December 8, 2004 the Interim President issued a decision affirming the prior decision of President Norman. The three paragraph decision read as follows:

> Pursuant to the collective bargaining agreement and the Arbitrator's award in I139-2407-02, the President's decision to dismiss you has been referred back to me for reassessment.
>
> I have reassessed this matter and in my professional judgment there is just cause to dismiss you. You failed to perform the core functions of teaching and supervising your students in your Biotechnology Rotation II course.

4

The College has a compelling interest in having faculty teach and supervise their students during all scheduled class/laboratory sessions.

In my professional judgment, the substantiated charges against you constitute an egregious failure on your part to perform the essential functions of your position as a professor at Massachusetts Bay Community College. I affirm the prior decision. See Attachment 1.

### III. Relevant contract provisions

The CBA (JX. 1) contains the following relevant provisions:

Article 1.02   Definitions

**Cause** – shall mean just cause

**Dismissal** – the discharge of any unit member for just cause prior to the expiration of that unit member's appointment.

**Tenure** – an appointment which vests a right to continued employment at a College without limit of time subject to dismissal for just cause in accordance with Article XIIIA and XV and retrenchment with Article XIX.

Article 10.06 – Step Three – Arbitration

**C. Authority of the Arbitrator**

Unless otherwise provided in the Agreement, the arbitrator shall have the authority to make a final and binding award on any dispute concerning the interpretation or application of this Agreement. The arbitrator's authority in matters which are arbitral is limited to a determination as to whether the provisions set forth in this Agreement were violated...

**E. Dismissal and Retrenchment**

If a unit member's employment is discontinued as a result of dismissal or retrenchment, and the arbitrator determines based on clear and convincing evidence that the decision of the President of the College or the President's designee was arbitrary, capricious or unreasonable, the arbitrator shall remand the matter for reassessment by the President of the College or the President's designee of the original decision but shall not have the result or effect of granting any binding award, provided however, that a part-time unit member shall have no right to grieve or arbitrate retrenchment decisions. After remand, the President of the College or the President's designee shall have thirty (30) days to render a new decision. If the grievant believes the decision of the President of the College or the President's designee on remand is arbitrary, capricious or unreasonable, the grievant may file an appeal to the original arbitrator ...in accordance with the

5

provisions of this Article. On appeal, if the arbitrator determines based on clear and convincing evidence, that the decision of the President of the College or the President's designee is arbitrary, capricious or unreasonable, the arbitrator shall have the power to make the grievant whole; provided, however, that any monetary award shall be reduced by way of mitigation by an amount equal to the total income received by the grievant during the period for which monetary damages are so awarded.

Article 15.02 – Dismissal

Dismissal is defined as the discharging of a unit member for just cause prior to the expiration of that unit member's appointment and shall not be invoked except through due process.

## IV    Argument

The Interim President iterates that there was just cause to dismiss Dr. Panse because he failed to perform the "core functions of teaching and supervising" his students and upheld the decision to dismiss. This decision is stated in a three paragraph letter bereft of further evidence, devoid of any analysis of the facts or the contract and without a justifiable explanation.

The Interim President states that Dr. Panse did not perform the core functions of teaching and supervising his students in the Biotechnology Rotation II course. In making this determination, the Interim President ignores the evidence presented at hearing. This evidence was summarized by the union in its brief:

> There is, however, incontestable evidence that the students worked hard in Rotation II and that the ones that remained learned cell tissue culture. Mr. Allen testified that he worked more than six hours per week (the allotted amount of time under the scheduled times) cleaning and preparing the instruments and researching his project for Rotation II. Ms. Padmalwar and Ms. Stanley testified that they worked from 9:00 AM until 2:00 PM on Rotation II and IV and came back to the lab at other times as well. They testified that they worked on performing a Western Blot and did a project presentation. Mr. Leach also testified about the number of hours that he worked in the lab and the project presentation that he performed. At the end of the semester, each of the students that remained in the lab learned to clean and maintain the equipment, they performed cell culture, they learned to prepare media, they learned to freeze and thaw cells, and

6

## Conclusion

Based upon the foregoing, MCCC requests an arbitral award finding that Dr. Panse was dismissed without just cause and that the President's decision to dismiss Dr. Panse was arbitrary, capricious or unreasonable. The Union requests that the arbitrator issue an award reinstating Dr. Panse forthwith with seniority, full back pay and benefits.

Respectfully submitted,

Massachusetts Community College
Council/MTA/NEA

By its attorney,

Daniel O'Connor
Shaevel & Krems
141 Tremont St.
Boston, MA 02111
617-556-0244

8

Case 1:04-cv-11658-RWZ     Document 20     Filed 01/13/2005     Page 11 of 15

AMERICAN ARBITRATION ASSOCIATION
ARBITRATOR'S OPINION & AWARD

Before Michael W. Stutz, Arbitrator

---

In the Matter of Arbitration between

MASSACHUSETTS COMMUNITY COLLEGE COUNCIL/
MTA/NEA

-and-

BOARD OF HIGHER EDUCATION,
Massachusetts Bay Community College

*Panse Dismissal*
*Merits*
*AAA Case No. 1139-2407-02*

---

### AWARD of the ARBITRATOR

The undersigned arbitrator, having been designated in accordance with the Parties' arbitration agreement, and having duly heard the proofs, allegations and contentions of the Parties, AWARDS as follows:

1. There was no just cause for the dismissal of the grievant.
2. The President's decision to dismiss the grievant was arbitrary, capricious or unreasonable based on clear and convincing evidence.
3. The matter is remanded for reassessment of the original decision by the President of the College.
4. The undersigned hereby retains jurisdiction in accordance with the Agreement.

November 9, 2004                                    Michael W. Stutz



**Subscribe**   Customer Service   BOSTON GLOBE REWARDS   Information & Comments

[LOGOUT]

**Shop Participating Merchants**
**Boston Globe Store**
**Monthly Offers**
**Globe Photos**
**Free Globe Archives**

Boston Globe **Rewards** | Free Globe Archives



January 4, 2005

**Privacy Policy**

Your story is listed below. To refine or expand your search, you can search again.

# TWO SUE COLLEGE, STATING COMPLAINTS HURT CAREERS

**Author:** By Erica Noonan, Globe Staff Correspondent
**Date:** 10/04/2001 **Page:** 7 **Section:** Globe West

GLOBE WEST 1 WELLESLEY - Alleging that their careers were damaged after they had complained about financial mismanagement and substandard curriculum offerings, two Massachusetts Bay Community College science professors are suing the school's top administrators.

According to lawsuits filed in Norfolk Superior Court, Bruce Jackson and Chandrakant *Panse* stated that their complaints against school practices resulted in retaliation, including demotion.

Jackson, who heads the two-year college's noted biotechnology program, filed suit in 1999 after a disagreement with former associate dean Sarkis Farah and then-vice president Marjorie Stewart over "questionable" handling of grant funding for the biotechnology department, according to court papers.

Jackson alerted the state auditor's office about the irregularities in November 1998, just a few months after a damaging report emerged that the school's then-president, Roger Van Winkle, had engaged in wasteful spending of more than $130,000, including lavish meals and trips.

In retaliation for his whistle-blowing, Jackson said, his supervisors gave him poor work evaluations and then removed him as chairman of the biotechnology department.

State law prohibits employers from taking action against employees who complain to authorities about workplace issues.

In a separate complaint, Jackson's colleague, *Panse*, stated that, after he complained that the school was allowing the course work to degenerate in quality, he was removed as chairman of the environmental technology department.

"It was an act of revenge by the college because deficiencies were being pointed out," said *Panse*, who said he was hired to raise the department's academic standards so that MassBay credits would be more regularly accepted at four-year institutions.

The program, which began granting degrees in 1995, has graduated more than 60 students and enrolls several dozen at any given semester, Jackson

said.

**Panse**, who earned undergraduate degrees in his native India, received advanced degrees in chemistry from Boston University, and has completed postdoctoral work at BU Medical School and Harvard Medical School, said he is familiar with the rigorous standards expected by local colleges and universities, and thinks that MassBay is not measuring up.

"I want my students to succeed where they go, not be failures at major universities because they don't know what they are supposed to know," he said.

Spokeswoman Pam Eddinger said the college cannot comment on pending litigation, except to say that it has filed a motion to dismiss the complaints.

But Jackson, who is African-American, said a culture of retaliation and racial discrimination pervades the school's dealings with his department.

He said he has filed a complaint against the school with the US Department of Education's Office of Civil Rights, citing the college's recent halting of a National Science Foundation grant that pays for nearly a dozen biotechnology students - nearly all women and minorities - to enroll in summer internship programs.

The federal agency confirmed that several complaints have been filed against MassBay in recent years, but a spokesman said he could not reveal the nature of the claims. Eddinger said the federal department has been in contact with the school, but declined to comment further.

Jackson and **Panse** said their conflicts with MassBay administrators are more than bureaucratic wrangling. At stake, the professors said, is the education of nontraditional minority students, who are generally older than mainstream college students, must work full time while in school, and have had little academic encouragement throughout their lives.

"We have to empower our students, and someone has to stand up. We have to teach our students, especially nontraditional students, to stand up for themselves," Jackson said. "You have to plant your flag and fight. It might take years."

All content herein is © Globe Newspaper Company and may not be republished without permission.