AFFIDAVIT OF PLAINTIFF

I, Chandrakant S. Pansé, do hereby state that the following is true to the best of my knowledge and belief:

1. The Office for Civil Rights in the Department of Education of the Federal Government issued a written warning in 2001, addressed to the President of Massachusetts Bay Community College (MBCC), that in view of a Title VII complaint against MBCC filed with said Office and a resulting investigation by said Office, MBCC was not to retaliate against, and further to take appropriate steps to prevent any hostile or threatening action against, anyone associated with a grant from the National Science Foundation (NSF). The issue involved reluctance or failure of MBCC to administer federal funds, obtained in part through the efforts of the plaintiff herein in his capacity as the Co-Principle Investigator for said NSF grant, for the betterment of minority students in the education in science of such students. Plaintiff, although so covered under said Warning, was subjected to dismissal from tenured professorship at Massachusetts Bay Community College ("MBCC") on August 2, 2002.

2. The defendant President of MBCC had told the plaintiff that MBCC was upset with the plaintiff's exercise of his protected activities and was going to watch the plaintiff specifically.

3. The charges against the plaintiff for the purposes of said dismissal amounted merely to the fact that during the Spring 2002 semester the plaintiff taught one research-type biotechnology rotation course per long-standing practices of open laboratory and peer-mentoring methods, as necessary for the research environment of the program.

4. The plaintiff has taught numerous other courses at MBCC, and has also been teaching in a biotechnology program at Boston University School of Medicine continuously since 1990.

5. MBCC did not state any charges whatsoever regarding any courses taught by the plaintiff other than the biotech rotation research course, or regarding any other matter whatsoever.

6. At the beginning of a hearing on July 29-30, 2002 pursuant to a Collective Bargaining Agreement, where the plaintiff could be dismissed only for just cause, the attorney for grievant/plaintiff moved that the hearing officer, Norman, recuse himself because Norman was a defendant in lawsuit brought by the grievant/plaintiff and pending at that time in the State Superior Court, and as such, Norman was incompetent to judge the grievant fairly.

7. Undisputed evidence at said hearing established that said biotech rotations had been designed and taught as described herein by the plaintiff from the very inception of said courses in 1993.

8. Undisputed evidence at said hearing also established that college officials had acknowledged under oath, during depositions in said action in the Superior Court, that they were aware of, and approved of, teaching methods as described by the plaintiff for the biotech rotations.

9. At said hearing, some defendants claimed under oath that they had told the plaintiff to change said teaching methods; plaintiff asserted under oath that _no_ such request or directive ever existed.

10. There does not exist a single piece of evidentiary paper anywhere to substantiate claims by some defendants that they told the plaintiff to change said teaching methods; accounts of meetings written by some defendants themselves, where said meeting were called and conducted by said defendants, demonstrate that no defendant ever told the plaintiff to change said teaching methods.

11. Plaintiff testified at said hearing that he would have undoubtedly changed said teaching procedures had he received any directive whatsoever to so change.

12. Plaintiff repeated said assertions at a CBA Article 15.02 (8) appeal hearing to the designee (Tsaffaras) of the Chancellor (Gill) of Higher Education for the Commonwealth.

13. Plaintiff routinely and till close to the end of his employment at MBCC expressed his concerns regarding the needs for improvements in standards of education at community colleges.

14. While arbitration pursuant to CBA Articles 15.02 (8) (b) and 10.06 was in progress, it became obvious to the Arbitrator that the employer had no case and the Arbitrator twice suggested to counsels for parties that they "settle".

15. The Arbitrator ruled on November 9, 2004 that the employer had no justification whatsoever to even impose any discipline on the plaintiff, much less discharge him.

16. The Office of the Attorney General for the Commonwealth conveyed its position on December 8, 2004 by e-mail to the plaintiff that the plaintiff should go back to his work now.

17. Even after the finding by the Arbitrator and the opinion of the Office of the Attorney General, the defendants failed to reinstate the plaintiff. On January 30, 2005, the Arbitrator issued an Order pursuant to CBA Article 10.06 (E) that "the Employer shall reinstate the grievant to his position and make him whole for lost benefits under the Agreement, including back pay, minus interim earnings and benefits." The defendants have yet to reinstate him as of making of this Affidavit on February 14, 2005.

18. In August 2002, the plaintiff applied for unemployment benefits, and MBCC claimed that the plaintiff was dismissed for misconduct and therefore was not entitled to said benefits. A hearing officer for the defendant Division of Unemployment Assistance (DUA) ruled in May 2003 that plaintiff had committed no misconduct because the employer had never notified the

plaintiff to change the teaching methods in question, and the plaintiff was therefore entitled to unemployment benefits. DUA, without any process whatsoever, denied the plaintiffs any benefits until December 2003, and never paid the plaintiffs all the benefits due, including benefits for the minor children of the plaintiff ($ 25 per child per week, or approximately $ 325 per month for plaintiff's 3 children).

19. Community Colleges are by law required to accept all students with a high school diploma or a GED, no matter how ill-prepared for college-level work; the average age of an MBCC student has approached 30 when the plaintiff was employed at MBCC, many such students being single mothers, etc.

20. Undisputed evidence at the hearing at MBCC on July 30, 2002, established that the biotechnology program at MBCC, as built by Professors Jackson and the plaintiff herein, had produced unbelievable success stories out of a community college student population.

SIGNED UNDER PAINS AND PENALTIES OF PERJURY, this 14th Day of February, 2005,

Chandrakant S. Pansé