UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No. 04-CV-11658-RWZ

C. S. PANSÉ, et al.,        Plaintiffs    }
                                          }
v.                                        }
                                          }
Lindsay NORMAN, et al.,    Defendants     }

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO CERTIFY QUESTIONS
FOR INTERLOCUTORY APPELLATE REVIEW

INTRODUCTION

This is an action to recover for injuries suffered due to raw, unending and repulsive abuse of governmental power by Defendants, as demonstrated by the record and Arbitrator's holdings. The Defendants were under a Title VII written Federal warning to not intimidate, or retaliate against, the Plaintiff,[1] who cooperated fully with a Federal Investigation and was dismissed from tenured professorship on August 2, 2002, on charges which were determined by an Arbitrator, in substance, to be retaliatory and to border on fraud. Evidence before the Court demonstrates that Due Processes purportedly provided by Defendants were nothing but a complete farce. Plaintiff has not been reinstated to his protected employment <u>three years and three months later</u>.[2]

---

[1] Plaintiff in the singular refers to the undersigned; other Plaintiffs are his minor children.

[2] The Board of Higher Education and the college appealed the Arbitrator's Order in the state's court, where their Motion for Judgment on the Pleadings was Denied and the union's Motion to Confirm the Arbitrator's Award Was Affirmed. The college then agreed to reinstate the Plaintiff at some future undetermined date, not because the Defendants understood that they had done anything wrong or because they were complete losers at arbitration and in the state court, and have no case, but because ". . . it is not in the best interest of the College to expend further resources litigating . . . ." Further, Plaintiff will produce evidence at trial tending to prove that the history of repeated retaliations against the Plaintiff is sure to repeat itself.

ARGUMENT

A party may move a District Court for an Order for an interlocutory appellate review pursuant to 28 U.S.C. § 1292(b).[3] *See, e.g., Yamaha Motor Corp. U. S. A. v. Calhoun*, 516 U.S. 199, 204 (1996). The District Court may grant such requests and certify question(s), and the Court of Appeals, in its discretion, may grant such appeals. *Id.* Although the Court of Appeals exercises jurisdiction over any question that is included within the order that contains the controlling question of law as determined by the District Court, *id.*, Plaintiffs submit that isolating issues herein will help clarify matters greatly.

The Questions proposed by the Plaintiffs, with rationale where necessary after each proposed Question, are:

QUESTION I

In a 42 U.S.C. § 1983 action, where the Plaintiff alleged

(A) wrongful and/or fraudulent termination from a tenure-protected professorship, and

(B) destruction by defendant employer college of an academic program

    (i) created by the plaintiff (and a minority colleague, also dismissed from his own tenured professorship),

    (ii) to promote minorities in scientific fields as a major goal, and

---

[3] 28 U.S.C. § 1292(b):
When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

   (iii) upheld by the federal government (through its National Science Foundation agency) as a model to be emulated throughout the country for undergraduate science education,

and where the District Court ignored <u>critical facts</u> that

(a) the defendant state employer was subjected to a FEDERAL INVESTIGATION pursuant to 34 C.F.R. § 100 and was under a WRITTEN WARNING by the Office for Civil Rights of the Federal Department of Education to forgo intimidation of, or retaliation against, the Plaintiff,

(b) there is documentation demonstrating conspiracies amongst high state officials to terminate Plaintiff (and his minority colleague) on racial basis,

(c) an Arbitrator of the American Arbitration Association, agreed to by the parties and vigorously represented by counsels, pursuant to a Collective Bargaining Agreement, held in November 2004 after 12 days of hearings <u>in the opposite extreme</u> that the Defendant employer state could <u>not even</u> justify <u>any discipline</u> against the Plaintiff, let alone discharge, in spite of numerous Defendants lying under oath at the Arbitration proceedings,

(d) the explanation by the United States Supreme Court that the purpose of "some kind of a hearing" as the minimal Due Process is to guard against a mistaken decision by the employer, coupled with Plaintiff's testimony that he would have complied with the employer's then requirements, given a chance, to save his job, further coupled with the Arbitrator's holding in the extreme, *supra*, demonstrate that both the steps of the process (hearings at college and at BHE) provided by the Defendant state employer were farces and/or frauds (the District Court instead finding that the Plaintiff was a loser at those sham hearings,)

(e) the office of the state Att'y Gen. declared voluntarily in December 2004 that the Plaintiff be reinstated to his position "now",

(f) the United States Supreme Court has expressed its concerns with the extremely deleterious

effects of deprivation of protected employment beyond a few months and the Supreme Court has therefore proposed mitigating solutions, and these solutions were ignored in the action at bar, the Question of law then certified to the Court of Appeals is whether the District Court abused its *sound* discretion, or erred otherwise, in misconstruing this action against incredibly raw abuse of governmental power, and turning it instead into a nuisance by Plaintiffs, as evidenced by the overall tone and the nature of decisions in the District Court's Memorandum.

For rationale, Plaintiffs submit that the law cannot be applied to facts where facts are not evident.

QUESTION II

Plaintiffs claimed a *pro se* standard of pleading. Pursuant to long-established practice, Plaintiffs could not be held to the standard of an attorney even if they had failed to assert this right. Further, on Defendants' Fed. R. Civ. Proc. Rule 12(b)(6) / Rule 56 Motions, Plaintiffs were entitled to all reasonable inferences on Plaintiffs' facts. Plaintiffs, for fairness and clarity, limited their claims to only some of the 13 defendants in some of the counts, and did not specify any particular defendant for Count 3 because it is obvious from a plain reading of the Amended Complaint that this Count is against all 13 Defendants, claims in this Count being dependant upon very broad grounds under the Constitution of the United States. The questions of law certified to the Court of Appeals are whether the District Court, absent any oral argument, abused its *sound* discretion, or erred otherwise, in (i) applying Count 3 only to the Defendants of the Court's choosing, and (ii) dismissing all § 1983 claims where raw abuse of governmental power by state's officers is obvious.

Rationale: Both *Haines* v. *Kerner*, 404 U.S. 519 (1972) and *O'Connor* v. *Yezukevicz*, 589 F.2d 16 (1st Cir., 1978) (*see* Plaintiffs' Memorandum in Opposition, at 20) require the District

Court to apply (if necessary at all) a *pro se* standard to the Plaintiffs' Amended Complaint and through liberal reading (if necessary at all) recognize Plaintiffs' valid claims.

QUESTION III

Where an unemployed professor complained of not being paid all that which was legitimately due him (and not being paid in any sort of timely manner the part which was paid) by a state unemployment insurance scheme, the District Court held that "plaintiff did not identify any statutory, regulatory or common law authority" that the plaintiff was due any unemployment benefits like everyone else, in spite of Plaintiffs claiming Equal Protection by invoking the Fourteenth Amendment; the Court therefore dismissed this Count.  Similarly, where Plaintiffs asserted that the state Governor ". . . owed a duty to the plaintiffs to direct those defendants, appointed by and answerable to the Governor, to stop any and all retaliatory schemes and reinstate the plaintiff at once, and should said orders not be carried out, to dismiss said defendants for misconduct and appoint individuals who would not be so devoid of morality and the will to obey the laws," and the Governor ". . . failed . . . causing harm to the plaintiffs," the District Court found that Plaintiff did not identify either a duty or conduct or injury or damage, and dismissed that Count as well.  The questions of law certified to the Court of Appeals are whether the District Court abused its *sound* discretion, or erred otherwise, in denying the Plaintiffs (i) the practice of simple notice pleading, the letter and the spirit of Fed. R. Civ. Proc. 8(a)(2), and (ii) assumption of facts and inferences favorable to Plaintiffs on Fed. R. Civ. Proc. 12(b)(6) / 56 Motion.

    Rationale: Same as above.  Further, as a matter of fact, a complaint engaging in discussion of law as required by this Court is subject to challenge as in violation of 'short and plain statement' requirement of Fed. R. Civ. Proc. 8(a)(2).

QUESTION IV

The case on point on the issue of intentional inflection of emotional distress (IIED) in termination of employment situations, and a landmark case on IIED, is *Agis* v. *Howard Johnson*, 371 Mass. 140 (1976), as relied on by Plaintiffs. Both *Tetrault* and *Payton*, on which the District Court relies, have nothing to do with termination of employment scenarios; both cite *Agis*. In *Agis*, a restaurant manager declared that he was starting to fire waitresses (who certainly did not enjoy any protected property interests in their employments,) in alphabetical order in order to discover the perpetrator of alleged minor thefts, and fired Agis. The court held that this constituted IIED. Where Plaintiffs stated facts far more outrageous that the state standards for elements of IIED, the question of law certified to the Court of Appeals is whether the District Court erred in not applying the most obvious and the most applicable standards and thereby dismissing Plaintiffs' IIED claims.

Rationale: Plaintiffs asserted the *Agis* standard. Amended Complaint ¶ 56 n. 21. That is the law most applicable and the law that can be applied in a most straightforward and least complicated manner.

Respectfully submitted, Oct. 31, 2005,

Chandrakant S. Pansé, *pro se*
34 Frances Street
Newton Highlands, MA 02461-1608
Tel. 617-527-9283
     617-967-8430
Email  DrCP@rcn.com