UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No. 04-CV-11658

| | | |
|---|---|---|
| C. S. PANSÉ, *et al.*, | plaintiffs | } |
| | | } |
| v. | | } |
| | | } |
| L. NORMAN, *et al.*, | defendants | } |

PLAINTIFFS' MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. PROC. 11 (c)

On 01-06-05, defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgement. Plaintiffs believe, and hence aver, that assertions in said Motion constitute plain lies and/or deliberately misleading arguments, and further, counsel's certification to this Hon. Court is plainly fraudulent, as hereinbelow.

Mr. Charles M. Wyzanski, Asst. Att'y Gen. for the Commonwealth of Massachusetts, representing all the defendants in their official capacities as well as in all of their personal capacities, furnished a draft of the said Motion to the plaintiff[1] on Monday 01-03-05, and asked the plaintiff to call said counsel by Friday 01-07-05 for a Local Rule 7.1(A)(2) conference (see Exhibit "A"). Counsel then filed said Motion on Thursday 01-06-05, before the plaintiff could engage in any conference and bring the said misdeeds to the counsel's attention.

Said counsel, nonetheless, filed a Certificate of compliance with this Hon. Court along with his Motion regarding such a conference. Said Certificate is thus deliberately fraudulent, requiring the plaintiffs to engage in unnecessary restatements of the truths and unnecessary arguments, and is thus injurious to the plaintiffs, as well as is a fraud upon this Hon. Court.

---

[1] Plaintiff in the singular refers to the undersigned; other plaintiffs are his minor children.

-2-

In this Commonwealth, the courts "are bound by the arbitrator's findings," of both fact and law, "(B)ecause of a strong public policy favoring arbitration, . . . ," *Board of Higher Education* v. *Mass. Teachers Assn., NEA*, No. 03-P-427 (Mass. Appeals Ct., slip opinion dated 9-15-04) (citations omitted). In this case, the Arbitrator held that the defendants did not have just cause even for imposing any disciplinary action, let alone the termination of employment.[2] Such a holding, *per se*, demonstrates that the due process offered to the plaintiff was a complete sham.

The argument that the plaintiff " . . . was not entitled to . . . production of documents, . . . under either the CBA or . . . "[3] is but another lie, since the CBA[4] Article 15.02 (7)(a) required the College to "make available necessary documents . . . within the President's control." The assertion that "(T)he defendants, nonetheless, did provide Pansé with many documents"[5] is deliberately misleading, as the defendants withheld documents of substance and only provided documents of little or no value.

Further, ' . . . the timing and nature of the required hearing "will depend on appropriate accommodation of the competing interests involved." ' *Logan* v. *Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982) (citations omitted). Here, the competing interest involved a tenured professorship, and required a due process commensurate with the property interest in such permanent employment status. Furthermore,

> . . . the Due Process Clause of the Fourteenth Amendment . . . contains a substantive component, sometimes referred to as "substantive due process," which bars certain arbitrary government actions "<u>regardless of the fairness of the procedures</u> used to implement them." (emphasis added)

---

[2] Amended Complaint, ¶ 40.

[3] Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 9.

[4] Relevant articles of the Collective Bargaining Agreement are annexed to the plaintiffs' Amended Complaint.

[5] Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 9.

-3-

*Daniels* v. *Williams*, 474 U.S. 327, 337 (1986) (concurring opinion of Justice Stevens, elaborating the majority's holding at 331) (citations omitted).

Thus, the lack of the basic and critical step in due process for a tenured professor, viz., notice pursuant to the CBA, is necessarily but one sign that due process[6] in this case was a fraud, the "arbitrary government action" being driven entirely by a motivation to, and a conspiracy to, retaliate in spite of a written federal warning.[7] Yet the counsel engages in unwarranted assertions regarding due process having been provided to the plaintiff.[8]

In view of defendant Norman's own admission *in writing* regarding his determination to terminate the plaintiff's employment prior to any hearing[9], the written federal warning, *supra*, notwithstanding, the counsel's argument, that the plaintiff did not allege facts to indicate unfairness and/or outright dishonesty of the defendants,[10] is also deliberately misleading.

Plaintiff's protected speech was continuous during the his employment and concerned the dire need for improvements in the nature and level of education at community colleges, which are known for poor quality education.[11] If the quality of education at public institutions is not a matter of public concern, nothing ever will be; plaintiff had nothing to gain personally but the defendant's wrath by this protected activity. Counsel's arguments regarding plaintiff's First Amendment rights[12] are, therefore, allegedly merely in continuation of his deliberate misleading.

If the counsel's arguments regarding qualified immunity had any merit whatsoever, he

---

[6]Amended Complaint, ¶ 24.

[7]*Id.*, ¶ 9, and also generally.

[8]Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 8.

[9]Amended Complaint, ¶ 26; other evidence on record at arbitration.

[10]Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 10.

[11]Amended Complaint, ¶ 18.

[12]Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 11.

would have begun his arguments with the applications of *Ex parte Young*[13], "one of the three most important decisions the Supreme Court of the United States has ever handed down,"[14] or *O'Neill* v. *Baker*, 210 F.3d 41 (1st Cir., 2000), and argued why the state officials herein are immune in spite of their alleged moral bankruptcy[15]. Further, the Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood" and held that

> . . . the employer shares the employee's interest in avoiding disruption and erroneous decisions; and until the matter is settled, the employer would continue to receive the benefit of the employee's labors. It is preferable to keep a qualified employee on than to train a new one. A governmental employer also has an interest in keeping citizens usefully employed rather than taking the possibly erroneous and counterproductive step of forcing its employees onto the welfare rolls. Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.

*Cleveland Board of Education* v. *Loudermill*, 470 U.S. 532, 544 (1985). The Asst. Att'y Gen. should find this inconvenient, but cannot engage in tactics such as herein.

The counsel then urges this Hon. Court to ignore the holding of the Massachusetts Supreme Judicial Court[16] in order to decline jurisdiction[17], and finishes with another blatant lie, viz., " . . . the appeal which the Union has filed on Pansé's behalf with the Arbitrator . . . seeks much of the same relief Pansé is requesting here, . . . ."[18] Rather, plaintiffs seek justice, which the arbitrator has no power to offer[19], for injuries[20] as described, partially only, by Justice

---

[13] 209 U.S. 123 (1908).

[14] 473 F. Supp. 560, 564 (E.D. Ohio 1979).

[15] Amended Complaint, ¶ 45.

[16] Amended Complaint, ¶ 36 and Footnote 8.

[17] Defendant's Memorandum in Support of their Motion to Dismiss . . ., at 17.

[18] *Id.*

[19] CBA Article 10.06 (B - G).

[20] Amended Complaint, ¶ 46.

Marshall (concurring in part and concurring in the judgment), *id.* at 549,

> . . . Considerable amounts of time may pass between the termination of wages and the decision in a post-termination evidentiary hearing - . . . before . . . a decision from his postdeprivation hearing. During this period the employee is left in limbo, deprived of his livelihood and of wages on which he may well depend for basic sustenance. In that time, his ability to secure another job might be hindered, either because of the nature of the charges against him, or because of the prospect that he will return to his prior public employment if permitted. Similarly, his access to unemployment benefits might seriously be constrained, because many States deny unemployment compensation to workers discharged for cause. Absent an interim source of wages, the employee might be unable to meet his basic, fixed costs, such as food, rent or mortgage payments. He would be forced to spend his savings, if he had any, and to convert his possessions to cash . . . Even in that instance
>
> > "[t]he substitution of a meager welfare grant for a regular paycheck may bring with it **painful and irremediable** personal as well as financial dislocations. . . . a person's **relationship with his friends and even his *family may be irrevocably affected***. The costs of being forced, even temporarily, onto the welfare rolls because of a wrongful discharge from tenured Government employment **cannot be so easily discounted**," . . .
>
> Moreover, it is in no respect certain that a prompt postdeprivation hearing will make the employee economically whole again, and the **wrongfully discharged employee will almost inevitably suffer irreparable injury**. . . . the delay in receipt of wages would **thereby be transformed into a *permanent deprivation***. Of perhaps equal concern, the **personal trauma** experienced during the long months in which the employee awaits decision, during which he **suffers doubt, humiliation**, and the loss of an opportunity to perform work, **will never be recompensed**, and indeed probably could not be with dollars alone.
>
> That these disruptions ... might fall upon a wrongfully discharged employee is simply unacceptable. ...
>
> Were there any guarantee that the postdeprivation hearing and ruling would occur <u>promptly, such as within a few days</u> of the termination of wages, then this minimal predeprivation process might suffice. ... if the employer had to pay the employee until the end of the proceeding, the employer obviously would have an incentive to resolve the issue expeditiously. The employer loses this incentive if the only suffering as a result of the delay is borne by the wage earner, who eagerly awaits the decision on his livelihood.

(citations omitted, emphasis added).

-6-

Further, the Truth of the matter herein lies in said counsel's written comments.[21]

Plaintiffs respectfully submit to this Hon. Court that the counsel's assertions, arguments and legal conclusions all thus stand in violation of Fed. R. Civ. Proc. 11 (b) (1-4).

Wherefore, pursuant to Fed. R. Civ. Proc. 11 (c) (2), and in view of alleged repeated misconduct by the Office of Massachusetts Att'y Gen.[22], plaintiffs herein respectfully demand that this Hon. Court Order restitution to the *pro se* plaintiff in an amount equivalent to reasonable fees the plaintiffs would have had to pay an attorney for this Motion for Sanctions, and further, Order the Office of Massachusetts Att'y Gen. to be honest and ethical in all its actions.

Plaintiff hereby certifies that he mailed the Motion hereinabove to said Asst. A. G. Mr. Charles M. Wyzanski, counsel for the defendants in their official as well as personal capacities, on the date below, pursuant to Fed. R. Civ. Proc. 11 (c) (1) (A), and should said Motion to Dismiss, or in the Alternative, for Summary Judgement, not be withdrawn by counsel within 21 days after service pursuant to said Rule, moves this Hon. Court for sanctions as requested above, pursuant to said Rule.

Respectfully submitted, this 19th day of Jan. 2005,

*[signature]*

Chandrakant S. Pansé, *pro se*
34 Frances St., Newton Highlands, MA 02461-1608
Tel. 617-527-9283 / 617-967-8430

---

[21] Amended Complaint, ¶ 42.

[22] Amended Complaint, ¶¶ 44, 45.

**EXHIBT A**

### Dr Pansé

**From:** Dr Pansé [DrCP@rcn.com]
**Sent:** Thursday, January 06, 2005 10:37 PM
**To:** 'CMW1126@aol.com'
**Subject:** RE: 7.1(2) Conference in Panse v. Norman, et al.

Dear Mr. Wyzanski,

Thank you for the draft copies of your documents.

My regrets for not being able to find the time to read these documents earlier. I did intend to look at them tonight (Thurs) and respond tomorrow (Fri). In view of your message below, I consider your threats, left on my answering machine this afternoon, that you intend to certify to the Court tomorrow that I declined this conference, to be inappropriate.

After a quick look, I will need at least a couple of days to read some of the cases you have cited. I'll be happy to stipulate additional time for you to file your Motions, since I am the one who needs the time before we can talk.

In the meanwhile, I would appreciate if you look (or look again) at a case I have noticed: O'Neill v. Baker, 210 F.3d 41 (1st Cir., 2000) (declaring in no uncertain terms that 1983 actions in personal capacities of officials are just fine.)

Very truly yours,

Chandra Pansé

---

**From:** CMW1126@aol.com [mailto:CMW1126@aol.com]
**Sent:** Monday, January 03, 2005 9:26 AM
**To:** drcp@rcn.com
**Cc:** charles.wyzanski@ago.state.ma.us
**Subject:** 7.1(2) Conference in Panse v. Norman, et al.

Dear Dr. Panse:

Attached please find a draft of what I intend to file with the federal district court. Pursuant to 7.1(2) of the United States District Court Local Rules, I wish to confer with you at your earliest convenience to attempt in good faith to resolve or narrow the issues. You can try to reach me at home (617-876-1983) today or Wednesday or in the office (617-727-2200x3093) on Tuesday, Thursday or Friday.

Very truly yours,
Charles M. Wyzanski

10/31/2005