UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No. 04-CV-11658-RWZ

C. S. PANSÉ, et al.,   plaintiffs   }
                                    }
v.                                  }
                                    }
                                    }
Lindsay NORMAN, et al.,   defendants   }

MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR RESTRAINING ORDER OR PRELIMINARY INJUNCTION
TO ENJOIN DEFENDANTS FROM WITHHOLDING PAY AND HEALTH INSURANCE

INTRODUCTION

This action follows injuries suffered due to dismissal of a tenured professor from his protected employment, where the record and the holdings of an Arbitrator demonstrate malice and raw abuse of governmental power by the Defendants; this Motion follows continuation of grievous injuries of the Plaintiffs due to failure of the Defendants to obey lawful Orders to pay, and a critical and urgent need for relief for Plaintiffs.

FACTS

1. The Defendants were under a Title VII written Federal warning to refrain from intimidation of, and retaliation against, the Plaintiff; nonetheless, Plaintiff was subjected to dismissal from a tenured professorship at Massachusetts Bay Community College ("MBCC") on August 2, 2002.

2. The Defendant President of MBCC had told the Plaintiff that MBCC was upset with the Plaintiff's exercise of his protected activities and was going to watch the Plaintiff specifically.

3. While arbitration pursuant to a Collective Bargaining Agreement ("CBA") was in progress, it became obvious to the Arbitrator that the employer had no case, and the Arbitrator twice

suggested to counsels that they "settle".

4. The Arbitrator, after 12 days of hearings involving examinations under oath of numerous witnesses and rebuttal witnesses by counsels on direct, cross, redirect, etc., ruled on November 9, 2004 that the employer had no justification whatsoever to impose any discipline on the Plaintiff, much less discharge him.

5. The Office of the Atty. Gen. for the Commonwealth opined on December 8, 2004, that the Plaintiff should go back to his work "now".

6. Even after the extraordinary finding by the Arbitrator and the remarkable opinion of the Office of the A.G., the Defendants continued their retaliation in spite of the written Federal warning, *supra*. On January 30, 2005, the Arbitrator issued an Order pursuant to CBA that "the Employer shall reinstate the grievant to his position and make him whole for lost benefits under the Agreement, including back pay, minus interim earnings and benefits."

7. The employer appealed the Arbitrator's Order in the state's Superior Court, although the Arbitrators holdings, in both facts and the law, are binding upon the state courts.[1] The faculty union, the party to the action, after months of prodding by the Plaintiff, moved to confirm the Arbitrator's Award, an equivalent of moving for Summary Judgment. This was followed by the employer's motion for judgement on the pleadings. The court heard oral argument on Sept. 1, 2005, and in a decision dated Sept. 14, 2005, threw out the employer's motion and affirmed the union's motion to confirm the Arbitrator's Award.

---

[1] "Because of a strong public policy favoring arbitration, . . . " "We may not pass on an arbitrator's alleged errors of law or fact." Higher Educ. Coordinating Council/Roxbury Community College v. Massachusetts Teachers' Assn./Mass. Community College Council, 423 Mass. 23, 27 (1996).

NB: Higher Educ. Coordinating Council was the precursor of the current Board of Higher Education, the employer herein.

8. In a decision dated Sept. 16, 2005, this Court rejected the Defendants' Eleventh Amendment immunity claims in the action herein, and held that the Plaintiffs stated a cause of action for § 1983 claims.

9. On Oct. 18, 2005, the Defendant President of the college sent to the Plaintiff the following four-sentence letter:

> Re: Massachusetts Board of Higher Education/Massachusetts Bay Community College v. Massachusetts Teachers Association/Massachusetts Community College Council
> CA No. 05-0696-H
>
> Dear Dr. Panse:
>
> I have determined that it is not in the best interests of the College to expend further resources litigating the above-referenced matter. Therefore, you will be returned to teaching and faculty duties effective the spring semester 2006. The Provost/Vive President of Academic and Student Affairs will communicate with you in the near future regarding your return. Payroll and backpay matters will be addressed in a separate communication.

10. Plaintiff has not heard one single word to date regarding backpay since said Oct. 18th letter.

11. Mitigation by Plaintiff: since his fraudulent termination in 2002, Plaintiff has looked for other equivalent work in Boston area, and applied for employment not offered by the same employer herein, the Board of Higher Education. Plaintiff faced the unemployability difficulty as elaborated by the Supreme Court of the United States (*Loudermill*, 470 U.S. 532, 549 (1985). ) Plaintiff was not hired. *See* Affidavit.

12. For the Settlement Conference in this action on Nov. 3, 2005, Plaintiff submitted that no settlement proposal could be made until the Arbitrator's Award was implemented in view of the continuing injuries of Plaintiffs.

13. Plaintiff is a dire financial situation, as can be readily perceived from the elaboration by the Supreme Court of the United States (*Loudermill*, 470 U.S. 532, 549 (1985), ) after the Plaintiff

being deprived of a salary for approximately 3 years and 3 months. With Plaintiff's family owing over $ 100,000 in debts such as credit cards, lines of credit, etc., some at interest rates of approximately 30% p.a., in addition to an approximately $ 200,000 mortgage, the family's total income is not sufficient or barely adequate to meet the minimum monthly payments on all debt in spite of Plaintiff now being on employer's regular payroll. The family cannot get any more credit; rather, the family must endure telephone calls at home from creditors, and is left with nothing to buy milk and bread with except premature withdrawals from dwindling retirement funds.

## ARGUMENT

"The very essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury. One of the <u>first duties of government is to afford that protection</u>" (emphasis added.) *Marbury* v. *Madison*, 5 U.S. 137, 163 (1803). Citing Blackstone's commentaries, vol. 3 at 23, the Court further held that whenever a legal right is invaded, there is a remedy. *Id.* The function of an injunction in such remedy is to afford preventive relief. *Lacassagne* v. *Chapuis*, 144 U.S. 119, 124 (1892). Where the government itself is the abuser, the *Marbury* Court pointed out that the King of Great Britain himself could be hauled into his own courts; he obeyed the court orders. *Marbury*, 5 U.S. 137, 163 (1803).

In the case at bar, this Court has held that the Plaintiffs state a cause of action pursuant to 42 U.S.C. § 1983, and Plaintiffs are entitled to full protection under the law where an Arbitrator's holdings demonstrate that the Defendants herein terminated the Plaintiff's employment fraudulently and maliciously. This full protection includes prompt payment of backpay due to the Plaintiff, in which the Defendants have failed entirely, in continuation of the fraudulent and

malicious retaliation going back several years.

As a result of the Defendants' actions, the Plaintiffs have suffered immensely and needlessly, and continue to suffer under the mountains of mounting debts.

Further, the language of the Defendant President of the college in the letter reinstating the Plaintiff (*see*, Fact 9, *supra*,) demonstrates the Defendants lack of regard for the Arbitrator's Order as well as the lack of regard for the state Supreme Judicial Court's holding (*see*, Footnote 1.)

The Defendants have no rationale whatsoever in not forwarding the backpay at once; rather, the Defendants will only serve their own purposes of mitigating their own continuing damages by paying at once. Similarly, the Defendants have nothing to gain by withholding health insurance for the Plaintiffs, but can only limit their own damages by immediate restoration of the Plaintiffs' health and dental insurance plans.

Wherefore, there exists every reason for this Court to allow the Plaintiffs' motion to restrain the Defendants from their conduct; on the other hand, there exists no reason whatsoever for the Court to deny this motion.

Wherefore, Plaintiffs request an urgent hearing and/or grant of the motion herein.

Respectfully submitted, Nov. 28, 2005,

Chandrakant S. Pansé, *pro se*
34 Frances Street
Newton Highlands, MA 02461-1608
Tel. 617-527-9283
Email DrCP@rcn.com

AFFIDAVIT

I, Chandrakant S. Pansé, residing at 34 Frances Street, Newton Highlands, MA 02461-1608, state the following to be true to the best of my knowledge:

1. My salary for my employment at the Massachusetts Bay Community College for a two-week pay-period is $ 2,295.381.

2. My salary at this job for the academic year 2002-2003 was the same as above, and has not changed since, there having been no new contract for the faculty since the expiration of an old contract in June 2002.

3. Since my termination from this employment on 8/02/02 until my reinstatement on 10/19/05, I was not paid for a total of 83.7 of the two-week pay periods.

4. During this approximately three years and three months of being unemployed, I checked the education/higher education columns in the help-wanted pages of the Boston Sunday Globe on every Sunday for equivalent work in the Boston area, where the employer was not the same (Board of Higher Education) who had dismissed me under the guise of my "misconduct." I applied for the one position I found (at the Massachusetts College of Pharmacy,) but was not even invited for an interview.

5. During this period, I received a total of $ 21.292.00 in unemployment benefits.

Signed under the penalties of perjury, this 28th day of Nov. 2005,

Chandrakant S. Pansé