UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No. 04-CV-11658-RWZ

| | | |
|---|---|---|
| Chandrakant PANSÉ, *et al.*, | plaintiffs | } |
| | | } |
| v. | | } |
| | | } |
| L. NORMAN, *et al.*, | defendants | } |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANT GOVERNOR ROMNEY'S MOTION TO
QUASH DEPOSITION SUBPOENA
AND
PLAINTIFF'S MOTION TO COMPEL ANSWERS INTERROGATORIES

Introduction

The action herein stems from raw abuse of governmental power in the extreme by high state officials, aided and abated by the office of the state Attorney General, and their continued collective thumping of noses at the Federal Constitution, laws and regulations.

FACTS

*See*, Verification, *infra*.

1. The Defendants herein were under a Title VII written Federal Warning from the Office for Civil Rights at the Federal Department of Education to refrain from intimidation of, and retaliation against, Plaintiff Chandrakant Pansé during times relevant to events in this action, as a Federal investigation of Mass Bay Community College ("MBCC,") a state college and Plaintiff Chandrakant Pansé's employer, was underway.

2. MBCC was also subject of an investigation by the National Science Foundation (NSF), a

-2-

Federal Agency, regarding a Federal grant for assisting minority students succeed in scientific fields, for which Plaintiff Chandrakant Pansé was a Co-Principal Investigator, at said times; NSF praised this program as model to be emulated throughout our country.

3. Plaintiff Chandrakant Pansé fully cooperated with these Federal investigations.

4. The Defendant President of MBCC had told Plaintiff Chandrakant Pansé that he was upset with the Pansé's exercise of his protected activities and was going to watch Pansé specifically.

5. The state dismissed Pansé from his tenured professorship, in which employment Pansé had protected property and liberty interests, in Aug. 2002 after purported "hearings" at MBCC and the Board of Higher Education ("BHE,") the BHE also being the employer herein.

6. The Chancellor of Higher Education, Defendant Judith Gill, who was appointed by and was acting under the direction of and for BHE pursuant to M.G.L. c. 15 § 6, and the BHE, made the final decisions to dismiss Federal laws and regulations by ignoring the written Federal warning in order to deprive Pansé of his Federal Constitutional rights, and also resulting in destruction of a model education program. Pansé could assert in his Complaint facts indicative of a conspiracy among high state officials.

7. The Defendant Governor, His Excellency Mr. Mitt Romney, has held out Defendant Chancellor Judith Gill as a member of the Governor's own Cabinet.

8. Individuals appointed to the BHE are almost entirely of the Governor's choosing pursuant to M.G.L. c. 15 § 1E. Similarly, individuals appointed to the Board of Trustees of MBCC are almost entirely of the Governor's choosing pursuant to M.G.L. c. 15A § 21.

9. The state refused to pay Pansé any unemployment benefits; after an appeal process, the state would not pay all the benefits due and did not pay what it did pay in a timely fashion.

10. During a 2002-05 course of arbitration, pursuant to a collective bargaining agreement, a

process deliberately delayed and prolonged by Defendants as added retaliation, it became obvious to the Arbitrator[1] that the employer had no cause to dismiss Plaintiff Chandrakant Pansé; the Arbitrator informally voiced his opinion to the parties on 4-17-2003 and 2-04-2004.

10. The Arbitrator, after 12 days of hearings involving examinations under oath of numerous witnesses and rebuttal witnesses by counsels on direct, cross, redirect, etc., ruled on 11-10-2004 that the employer <u>could not justify any disciplinary action</u> against Pansé, <u>much less a discharge</u> (i.e., the Arbitrator, without even mentioning the written Federal Civil Rights Warning, found in substance that the <u>state's hearings were absolute shams</u> and the state had done despicable violence to the Federal Constitution and laws.)

11. Although the authority to hire and fire the President of the University of Massachusetts rests with the Board of Trustees of that institution, media reports indicated that Defendant Romney used the bully pulpit of his governorship to raise public hell against the Hon. Mr. William Bulger for an alleged failure to cooperate with law enforcement in apprehending his gangster brother, forcing Mr. Bulger to resign his presidentship of the University of Massachusetts.

12. The Governor was put on notice on Nov. 02, 2004 (by Service of Complaint herein) that a member of the Governor's own Cabinet and other very high state officials had rejected a written Federal Civil Rights Warning and had done violence to the Federal Constitution and laws, that this violence had caused deprivation of Constitutional rights and severe injuries to Plaintiffs, and that this violence was ongoing and needed to be stopped at once.

13. The violence to the Plaintiffs' Federal rights, and the resulting grievous injuries, continued absolutely unabated for another entire year, and continues in some forms <u>to this day</u>.

---

[1] The Arbitrator was agreed upon by the parties pursuant to the relevant provisions of the American Arbitration Association.

14. The Office of the Atty. Gen. for the Commonwealth opined in Dec. 2004 that Pansé should be reinstated and go back to his work "now;" i.e., the Governor's Cabinet Officer, Gill, should cease her illegal conduct at once.

15. When the Defendants continued their illegal retaliation, the Arbitrator in Jan. 2005 Ordered that "the Employer shall reinstate the grievant to his position and make him whole".

16. The employer, determined to perpetuate said retaliation, Pansé's protected Federal property and liberty interests in his employment and health benefits notwithstanding, and in continuation of utter disregard for Federal Civil Rights laws, filed an entirely frivolous appeal of the Arbitrator's Order in the state's Superior Court, knowing very well that the Arbitrators holdings, in both facts and the law, are binding upon the state courts.[2] That court affirmed the Arbitrator's Award in Sept. 2005.

17. The Governor, by his own admission, has done absolutely nothing (*see*, Defendant's Motion to Quash) to this day to curtail the desecration of the Federal Constitution and laws, as herein, by a member of his own Cabinet and other very high state officials; i.e., the Governor made a deliberate affirmative choice to ignore, and to allow by high state officials, the deliberate continuation of violations of Plaintiffs' Civil Rights, and the Governor made a deliberate affirmative decision to compound the Plaintiffs' pre-existing injuries.

18. Media reports indicated that the Governor spoke out repeatedly for providing medical insurance coverage for the uninsured, while deliberately and illegally aiding and abetting deprivation of such coverage for the Plaintiff and his family.

---

[2]"Because of a strong public policy favoring arbitration, . . . " "We may not pass on an arbitrator's alleged errors of law or fact." Higher Ed. Coordinating Council/Roxbury Community College v. Mass. Teachers' Assn./Mass. Community College Council, 423 Mass. 23, 27 (1996). (HECC was the precursor body of the current BHE, Pansé's employer herein.)

-5-

19. Also in Sept. 2005, the United States District Court rejected in part the Defendants' motion to dismiss or for summary judgment, and held that Pansé stated a cause of action for § 1983 claims against the individuals left as Defendants herein. (The Court, however, denied many other claims of Pansé, some in obvious violations of the Fed. R. Civ. Proc. and/or case law, thereby substantially weakening the Plaintiffs' case.) In a Conference on 11-03-2005, the Court asked Pansé regarding the Governor being a defendant, and upon Pansé's explanation, allowed the action against the Governor, personally, to continue.

20. The outrage at the abusive actions of the Defendants, along with the destruction of an educational program upheld by the Federal government as model for our Country, in part, prompted Pansé to acquire an education in law; he is half way through an ABA-accredited law school.

21. The Defendants have ignored not just the laws but also an explicit warning from the United States Court of Appeals in a parallel case[3] that this employer risked the Court making law which the employer "does not want made," and have continued their retaliatory harassment practices against Pansé at work, words of 'welcome back' by some notwithstanding, and have created some mere paperwork to serve as smoke and mirrors to hide their true intents and actions.

22. Pansé propounded 25 Interrogatories to Defendant Romney on 4-19-2006; three of these (Interrogatories 8, 14 and 17) were struck and re-propounded on 4-24-2006. All Service was by hand.

---

[3]Oral Argument on 10/9/03 in *Jackson* v. *Norman*, No. 02-2425, at or about 13:05 min. of the audio record (vacating the District Court; not for publication, not to be cited as precedent except in the 1st Circuit.)

ARGUMENT

I. DELIBERATE AND CALLOUS INDIFFERENCE TO CONSTITUTIONAL VIOLATIONS MAKES THE GOVERNOR PERSONALLY LIABLE IN A § 1983 CLAIM IN THIS CIRCUIT, AND MAKES HIM A DEFENDANT PARTY SUBJECT TO DISCOVERY

While there may be no § 1983 supervisory liability based solely on a theory of respondeat superior, a court can find a <u>supervisor liable</u> on the basis of <u>his own acts or omissions</u>. *Febus-Rodriguez* v. *Betancourt- Lebron*, 14 F.3d 87, 92 (1st Cir. 1994), citing *Bowen* v. *City of Manchester*, 966 F.2d 13, 20 (1st Cir. 1992), *Gutierrez-Rodriguez*, 882 F.2d at 562, and *Figueroa* v. *Aponte-Roque*, 864 F.2d 947, 953 (1st Cir. 1989).

To incur liability, a supervisor's acts or omissions have to amount to a reckless or callous indifference to the constitutional rights of others. *Febus-Rodriguez*, 14 F.3d at 92, citing *Gutierrez-Rodriguez*, 882 F.2d at 562, and *Bordanaro* v. *McLeod*, 871 F.2d 1151, 1163 (1st Cir.), cert. denied, 493 U.S. 820 (1989).

However, there is "no difference of moment" between the "<u>gross negligence amounting to deliberate indifference</u>" standard and the reckless and callous indifference standards for the purposes herein, and "Indifference that rises to the level of being deliberate, reckless, or callous suffices to establish [supervisory] liability under § 1983." *Febus-Rodriguez*, 14 F.3d at 92, n.4, citing *Gutierrez-Rodriguez*, 882 F.2d at 562. There just has to be an "affirmative link" between a supervisory official's omissions and the subordinate's violation of a plaintiff's constitutional rights. *Id.*

In the case at bar, Defendant Governor Romney has been on actual notice from 11-02-2004 that the Plaintiffs have suffered, and continue to suffer, deprivations of constitutionally protected employment and accompanying benefits, and resulting grievous injuries, due to

appallingly illegal conduct at the highest levels of the state government, and indeed in his own Cabinet.

Further, as a graduate of Harvard Law School, Defendant Romney has certainly been capable of understanding and comprehending the gravity of issues herein.

This case is thus very different from the mayor of a city not being liable for a past occurrence of use of excessive force by a patrolman on the city's police force under any theory, so long as the patrolman did not use excessive force against the citizenry habitually and routinely and the mayor had no actual knowledge that the city negligently hired officers with violent pasts or deliberately trained them improperly.

Here, there was a standard which was explicitly spelled out in a written Federal Civil Rights Warning, which every employee or agent of the state had to obey, that the Plaintiffs' rights were to be protected in view of a Federal investigation of the state college. The Defendant Governor has always had an affirmative duty to insist, at least to the state's highest officials and to his own Cabinet, that laws and regulations of this Nation must be obeyed.

Further, the Defendant Governor has had an obvious duty, when put on notice on 11-02-2004 of illegal conduct at the highest state level causing desecration of the Federal Constitution and violation of Plaintiffs' constitutional rights, to issue immediate cease and desist Orders to state officials to bring such illegal conduct to an immediate stop. The Defendant Governor chose a course of deliberate ignorance. The Defendant Governor thereby chose to allow violations of Plaintiffs' constitutional rights, and resulting injuries, to grow with time and be compounded, rather than mitigate the state's damages.

The Defendant Governor can conceivably argue that prior to 11-02-2004 he was without any knowledge of the Pansés' injuries, and he was not liable in spite of said affirmative duty to

instruct his own Cabinet and other very high officials to simply obey the laws. The Pansés would have had a tenuous claim against the Governor if the Governor, made aware of the violations of Constitutional rights of the Plaintiffs on 11-02-2004, had taken immediate steps to stop the violations of the Pansés' Constitutional rights.

The Governor, instead, chose the course of deliberate indifference to the Plaintiffs' plights, and chose the course of at least passively, if not actively, joining other high state officials (and their conspiracies) to further violate the Pansés' Constitutional rights and worsen their injuries.

Given his significant direct personal liability in this action, Defendant Romney is no different from any other Defendant, and there exists no reason under the grave circumstances herein to deny the Plaintiffs their rights to proper and adequate discovery under the Federal Rules of Civil Procedure as the parties prepare for trial.

## II. THE DEFENDANT GOVERNOR SHOULD BE COMPELLED TO PROVIDE FULL ANSWERS TO ALL INTERROGATORIES AS REASONABLY CALCULATED TO LEAD TO CRITICALLY IMPORTANT ADMISSIBLE EVIDENCE

The Defendant Governor engaged in an extreme act of desecration of the Constitution of the United States, the First, Fifth and the Fourteenth Amendments in particular, as applicable to the Plaintiffs herein, all the while this Defendant thumping his nose at a written Federal Civil Rights warning he was notified about. *Supra.*

Under such extraordinary circumstances, it is an entirely appropriate enquiry as to the motivations, intents and the state of mind of this Defendant during his extraordinary misdeeds, and his past record or history of violations of Civil Rights of others, these obviously amounting

to admissible evidence.

Wherefor, this Defendants "objections" to the Interrogatories propounded to him are mere stalling tactics

III. THE DEFENDANT GOVERNOR SHOULD BE COMPELLED TO PROVIDE FULL ANSWERS TO ALL INTERROGATORIES AS HE HAS LOST ANY RIGHT TO ANY OBJECTIONS

Any limit to a discovery request is not self-executing, including the limits imposed by Rule 26. *Marx* v. *Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991). "The burden is on the party asserting a privilege to do so in a timely and proper manner and to establish the existence and applicability of the privilege" (emphasis added.) *Id.*

The assertion of a privilege must be timely, i.e., must be made within the 30 days allowed by the Federal Rules of Civil Procedure, and "must also be accompanied by sufficient information to allow the court to rule intelligently on the privilege claim" (emphasis added.) *Id.*, citing *Peat, Marwick, Mitchell & Co.* v. *West*, 748 F.2d 540, 541 (10th Cir. 1984), cert. dismissed, 469 U.S. 1199 (1985).

Where a party fails to assert any privilege within the 30 day period explicitly granted by the Rules controlling discovery, there exists no provision in the Rules for a court to extend that period to assert any privilege not asserted in the explicitly permitted 30-day window.

Further, where a party asserting a privilege fails to provide sufficient information for the court to assess the assertion in an intelligent manner, the claim if privilege stands waived.

Here, Pansé propounded 25 Interrogatories to Defendant Romney on 4-19-2006; three of these (Interrogatories 8, 14 and 17) were struck and re-propounded on 4-24-2006. All Service

was by hand.  Thus, Answers to 22 Interrogatories were due in Pansé's hands on 5-19-2006, and Answers to Interrogatories 8, 14 and 17 on 5-24-2006.

Defendant Romney, in his continuation of thumping of his nose at the Federal Constitution and the Federal laws and regulations, has refused to provide any answer to any Interrogatory under oath, as required by Rule 33 of the Federal Rules of Civil Procedure.  *See*, Defendant's own Exhibit B (responses signed only by counsel.)

No response to any Interrogatory was mailed by until 6-15-2006, weeks after the right to object had expired pursuant to *Marx v. Kelly, Hart & Hallman, P.C.*, the Rule in this Circuit.

Further, the untimely objections as asserted to these Interrogatories are entirely devoid of any information whatsoever, let alone sufficient information, pursuant to *Marx v. Kelly, Hart & Hallman, P.C.*, to allow the court to make any intelligent rulings as to the merit of any objection.

Wherefor, the actions of Defendant Romney amount to not mere stalling tactics but outright and deliberate violations of Federal Rules governing discovery.

Wherefor, Defendant Romney should be compelled to answer each Interrogatory in full and under Oath.

## CONCLUSION

Wherefore, the Court should deny the Motion to Quash Deposition Subpoena, and compel the Defendant Governor to provide full answers to all Interrogatories.

## VERIFICATION

I have prepared the "Facts" myself and read the foregoing and know the contents thereof, and the same is true of my own knowledge, except as to the matters stated therein on information and belief, and as to those matters I believe them to be true.

## ORAL ARGUMENT

Plaintiff Chandrakant Pansé requests oral argument for the motions herein.

Respectfully submitted,

*[signature]*   6/20/06

Chandrakant Pansé
34 Frances Street
Newton Highlands, MA 02461-1608
Home Tel. 617-527-9283
DrCP@rcn.com

-11-