**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

_____
                                )
                                )
CHANDRAKANT S. PANSE <u>et al.</u>,   )
                                )
    Plaintiffs,            )
                                )     C.A. No. 04-CV-11658-RWZ
v.                              )
                                )
LINDSAY NORMAN, <u>et al.</u>,        )
                                )
    Defendants.            )
_____)


**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION**
**FOR SUMMARY JUDGMENT**

**I.    <u>Introduction</u>**

Plaintiff Chandrakant S. Pansé ("Pansé") has brought this 42 U.S.C. §§ 1983 and 1988 <u>pro se</u> action against various officials of the Massachusetts Bay Community College ("the College"), the Board of Higher Education, the Division of Unemployment Assistance, and the Governor of Massachusetts (hereinafter collectively referred to as "the defendants"). He seeks damages for the August 2002 termination of his employment at the College and its consequences. Upon motion of the defendants, eight of the nine counts of Pansé's Complaint were dismissed by September 16, 2005 Order of this Court. What remains is Count III.

−2−

Pansé alleges in Count III that the defendants denied him his procedural and substantive due process rights and freedom of speech under both the United States and Massachusetts Constitutions.  The defendants are entitled to summary judgment as a matter of law because Pansé received all procedural process that was his due, he was not subjected to any violation of substantive due process but at most mere legal error, and his speech was not about a matter of public concern nor was it a substantial or motivating factor in the termination of his employment. Moreover, even if Pansé had suffered constitutional error, the defendants would be protected by qualified immunity because such error would not have been apparent to reasonable officials in the specific circumstances of this case.

## II.  **Undisputed Facts**

For the purposes of this summary judgment motion, the defendants submit that the following numbered material facts are not in dispute:

1.   In 1993, the College hired Pansé as an associate professor of biotechnology;[1] in 1996, he was promoted to the

---

[1]    Amended Complaint, ¶ 13.

–3–

rank of professor[2]; and in 1999 he was granted tenure.[3]

2.    In March 2002, the College received complaints from five different students in Pansé's biotechnology classes.[4]  Efforts were made to resolve the complaints at the Departmental level without success.[5]  An investigation followed.[6]

3.    At the conclusion of the investigation, defendant Paula Gastenveld, the College's Vice President for Academic Affairs, recommended to defendant Lindsay Norman, the College's President, that Pansé be dismissed from employment.[7]

4.    Per the Collective Bargaining Agreement (the "CBA"),[8] Norman notified Pansé, providing him with a copy of the investigative report and offering to discuss the matter with him.[9]  Pansé declined the offer to meet.[10]

---

[2]    Id.
[3]    Id.
[4]    March 15, 2002 Memorandum from Darkazalli to Pansé, p. 3, a copy of which is annexed as Exhibit A.
[5]    May 16, 2002 Memorandum from Darkazalli to Pansé, a copy of which is annexed as Exhibit B.
[6]    Exhibit B.
[7]    May 23, 2002 letter from Gastenveld to Norman, a copy of which is annexed as Exhibit C.
[8]    Exhibit D, 15.02(2).
[9]    May 28, 2002 letter from Norman to Pansé, a copy of which is annexed as Exibit E.
[10]   Transcript of Arbitration, Day 7, pp. 81-83, a copy of

-4-

5.    On May 31, 2002, Norman provided Pansé with a
formal statement of charges, per the CBA,[11] citing Pansé's
failure to teach, supervise, or be present during scheduled
laboratory classes--all without authorization and contrary
to the course description.[12]

6.    Pansé was afforded a formal hearing, per the
CBA.[13]  It commenced on July 29, 2002 and lasted two days,
during which time Pansé was represented by counsel.[14]

7.    On August 2, 2002, Norman notified Pansé that he
found the charges to have been substantiated and that Pansé
would be dismissed.[15]

8.    Per the CBA,[16] Pansé appealed his dismissal to
defendant Judith I. Gill, the Chancellor of Higher
Education   On August 30, 2002, Pansé's appeal was denied
and Pansé's dismissal upheld.[17]

9.    The Massachusetts Community College Council/MTA

---

the relevant pages are annexed as Exhibit F.
[11]  Exhibit D, 15.02(3).
[12]  May 31, 2002 letter from Norman to Pansé, a copy of
which is annexed as Exhibit G.
[13]  Exhibit D, Article XV, 15.02(4)-(7).
[14]  A copy of the transcript of the hearing is annexed as
Exhibit H.
[15]  August 2, 2002 letter from Norman to Pansé, a copy of
which is annexed as Exhibit I.
[16]  Exhibit D, 15.02(8).
[17]  August 30, 2002 letter from Tsaffaras to O'Connor, a

–**5**–

Union ("the Union") thereafter sought arbitration on Pansé's behalf, per the CBA.[18]

10.  After arbitration, the Arbitrator issued an Opinion and Award on November 9, 2004.  He found that Pansé's dismissal was without just cause and was arbitrary, capricious and/or unreasonable.[19]  The Arbitrator remanded the matter to the President of the College for reassessment of the decision.[20]

11.  By this time, Norman had been succeeded by an Interim President, defendant Andrew Scibelli.  Scibelli reassessed the decision and reaffirmed Pansé's dismissal, per the CBA.[21]

12.  On December 15, 2004, the Union returned to the Arbitrator who found, once again, that Pansé's dismissal was without just cause and was arbitrary, capricious and/or unreasonable.  He voided Pansé's dismissal and ordered that he be reinstated and made whole, per the CBA.[22]

---

copy of which is annexed as Exhibit J.
[18]  Exhibit D, 10.06(E); 15.02(8)(b).
[19]  November 9, 2004 Award of the Arbitrator, a copy of which is annexed as Exhibit K.
[20]  Id.
[21]  Exhibit D, 10.06(E); letter from Scibelli to Pansé, a copy of which is annexed as Exhibit L.
[22]  January 30, 2005 Award of Arbitrator, a copy of which is annexed as Exhibit M.

-6-

13.  The College brought suit in Suffolk Superior
Court to vacate the arbitration award.  <u>Massachusetts Board
of Higher Education/Massachusetts Bay Community College v.
Massachusetts Teachers Associaton/Massachusetts Community
College Council</u>, Suffolk C.A. No. 05-0696-H.  The Superior
Court affirmed the award and remanded the matter to the
arbitrator for calculation of Pansé's damages.[23]

14.  The College has since then reinstated Pansé[24] and
paid him all outstanding back pay and benefits, minus the
unemployment compensation Pansé had received.[25]  The College
has also advised Pansé that he would be compensated for any
documented out of pocket health-related bills for
appropriate reimbursement.[26]

## III.  <u>Argument</u>

### A.    The Applicable Summary Judgment Standard.

Summary judgment is appropriate where there is no
genuine issue of material fact and the moving party is

---

[23]  A copy of the Memorandum of Decision and Order are
annexed as Exhibit N.

[24]  October 19, 2005 letter from Joseph to Pansé, a copy
of which is annexed as Exhibit O.

[25]  Exhibit D, 10.06(E); January 9, 2006 letter from
Taylor to Pansé, a copy of which is annexed as Exhibit
P.

[26]  <u>Id.</u>

–**7**–

entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c).  A "material fact" is "a contested fact [that] has the

potential to change the outcome of the suit...."  <u>McCarthy v.</u>

<u>Northwest Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir. 1995).

"Genuine" is defined as when "the evidence about the fact is

such that a reasonable jury could resolve the point in favor

of the nonmoving party."  <u>Id.</u>

    **B.**    **Pansé Was Not Deprived Of Procedural Due Process.**

    Pansé claims that his dismissal and its consequences

violated his right to procedural due process under the

Fifth and Fourteenth Amendment, as well as the under the

Massachusetts Constitution.[27]

    At the outset, it should be noted that the federal and

Massachusetts standards for a procedural due process

analysis are identical.  <u>Liability Investigative Fund</u>

<u>Effort, Inc. v. Massachusetts Med. Prof. Ins. Assn.</u>, 418

Mass. 436, 443 (1994) ("We observe preliminarily that we

have treated the procedural due process protections of the

Massachusetts and United States Constitutions

identically."); <u>School Comm. of Hatfield v. Board of Educ.</u>,

372 Mass. 513, 515 n. 2 (1977)("The protection afforded

property interests by both [federal and Massachusetts due

-8-

process] provisions is subject to the same analysis.");
Doyle v. Department of Indus. Accidents, 50 Mass.App.Ct.
42, 45 (2000)(noting that "the procedural protections" of
the federal constitution and the Massachusetts Declaration
of Rights "are co-extensive").

To avoid summary judgment on a procedural due process
claim, a plaintiff must show (1) that he had a property
interest defined by state law; and (2) that defendants,
acting under the color of state law, deprived him of that
interest without adequate process.  See Logan v. Zimmerman
Brush Co., 455 U.S. 422, 428 (1982); Licari v. Ferruzzi, 22
F.3d 344, 347 (1st Cir.1994).  While Pansé undoubtedly had
a cognizable property interest in his tenured position at
the College, Cotnoir v. University of Maine Systems, 35 F.
3d 6, 10-11 (1994), and the defendants acted under color of
state law, Pansé cannot show that he was deprived of due
process.

In the context of a dismissal from a tenured position,
procedural due process guarantees some form of hearing,
with notice and an opportunity to be heard.  Cleveland Bd.
of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); Collins
v. Marina-Martínez, 894 F.2d 474, 480 (1st Cir.1990); Newman

---

**27**    Amended Complaint, ¶ 59.

-**9**-

v. Com. of Mass., 884 F.2d 19, 23 (1st Cir. 1989).  While a

hearing need not be elaborate, a "tenured public employee

is entitled to oral or written notice of the charges

against him, an explanation of the employer's evidence, and

an opportunity to present his side of the story."

Loudermill, 470 U.S. at 546; Brasslett v. Cota, 761 F.2d

827, 836 (1st Cir. 1985).

Pansé was provided this procedural due process and

much more.  He was provided with a formal statement of the

charges against him.[28]  Two months later, he was afforded a

two-day hearing, in which he was represented by counsel and

had ample opportunity to call witnesses, present testimony,

confront and cross-examine adverse witnesses, and argue

against the recommended dismissal.  He was thereafter

served with a written decision and the facts on which it

was based.[29]  He exercised his right of appeal and when that

was unsuccessful he was able to proceed to arbitration,

where the dismissal was ultimately voided and his back pay,

benefits and seniority restored.[30]

Pansé, nonetheless, maintains that it was a denial of

due process for Norman to act as the decision-maker

---

[28]    Exhibit G.
[29]    Exhibit I.

–**10**–

regarding the charges against him.  He claims that Norman
was biased because he

> had explicitly expressed his displeasure at
> [Pansé's outspokenness regarding the nature
> and level of community college education],
> failed in his duties to provide [Pansé] a
> secure atmosphere conducive for academic
> work, harassed him, and engaged in undue
> retaliation.[31]

Such allegations are nothing more than "'conclusory
allegations, improbable inferences, and unsupported
speculation'" which, standing alone, cannot withstand
summary judgment.  Feliciano de la Cruz v. El Conquistador
Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000);
Matthews v. Ocean Spray Cranberries, 426 Mass. 122, 127
(1997).  There is also a "presumption that state
administrators are fair and honest."  O'Brien v. DiGrazia,
544 F.2d 543, 547 (1st Cir. 1976).  Moreover, a decision-
maker is not to be disqualified by the mere fact that he
was the person who instigated investigation into the
matter.  Id.  Finally, it was not Norman who was the
ultimate decision-maker as to Pansé's dismissal.  Rather,
it was Gill, the Chancellor of Higher Education, to whom
Pansé had duly appealed.[32]

Even if Pansé could show that he was denied procedural

---

[30]   Exhibit M.

[31]   Amended Complaint, ¶ 18.

[32]   Exhibit J.

-11-

due process, he would not have a federal cause of action.

The law is well-established that:

> if a state provides adequate postdeprivation
> remedies--either by statute or through the
> common-law tort remedies available in its
> courts--no claim of a violation of procedural
> due process can be brought under Section(s)
> 1983 against the state officials whose random
> and unauthorized conduct caused the
> deprivation.

Lowe v. Scott, 959 F.2d 323, 340-41 (1st Cir. 1992).

Here, Pansé was provided adequate post-deprivation
remedies in the form of CBA-mandated arbitration as well as
judicial review in the Massachusetts Superior Court
pursuant to M.G.L. c. 30A, § 14 and in the Supreme Judicial
Court pursuant to M.G.L. c. 249, § 4.  Indeed, these post-
deprivation state remedies resulted in Pansé's
reinstatement and the restoration of his back pay and
benefits.

Pansé was not denied procedural due process because
his post-deprivation relief did not include the emotional
distress and punitive damages which he now seeks.  Post-
deprivation remedies need not be identical or as complete
as might otherwise be obtained in federal court in order to
satisfy procedural due process.  The Supreme Court has
explicitly held that:

**-12-**

> [a]lthough the state remedies may not provide
> the respondent with all the relief which may
> have been available if he could have
> proceeded under § 1983, that does not mean
> that the state remedies are not adequate to
> satisfy the requirements of due process.

Parratt v. Taylor, 451 U.S. 527, 544 (1980).  Thus, a

plaintiff misses the mark by claiming that state remedies

were insufficient "solely because relief might be delay and

damages unavailable."  Licari v. Ferruzzi, 22 F.3d 344, 348

(1st Cir. 1994).  "A damage remedy is not an essential

component of constitutionally adequate review procedures."

Chongris v. Board of Appeals, 811 F.2d 36, 44-45 (1st

Cir.), cert. denied, 483 U.S. 1021 (1987).

### C.   Pansé Was Not Deprived Of Substantive Due Process.

Pansé alleges the violation of substantive as well as

procedural due process.  Even taking the facts in the light

most favorable to the plaintiff, as we must, Mesnick v.

General Elec. Co., 950 F.2d 816, 822 (1st Cir.1991), Pansé

do not come close to making out a substantive due process

violation.

The Court of Appeals has provided the following

guidance when parsing a substantive due process claim at

summary judgment:

> it is only when some basic and fundamental
> principle has been transgressed that "the
> constitutional line has been crossed." As
> distinguished from its procedural cousin...a
> substantive due process inquiry focuses on

–**13**–

> "what" the government has done, as opposed to
> "how and when" the government did it. And
> although the yardstick against which
> substantive due process violations are
> measured has been characterized in various
> ways, we are satisfied that, before a
> constitutional infringement occurs, state
> action must in and of itself be egregiously
> unacceptable, outrageous, or conscience-
> shocking.

Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990), cert.

denied, 498 U.S. 1041 (1991)(citations omitted).

        The action of the defendants did not transgress any

basic or fundamental principle nor can it be fairly

characterized as egregiously unacceptable, outrageous, or

conscience-shocking.  It is true that the Arbitrator found

that "[t]here was no just cause for [Pansé's] dismissal"

and that Norman's decision to dismiss him was "arbitrary,

capricious or unreasonable based on clear and convincing

evidence."[33]  However, the Arbitrator acknowledged that

there was a question as to whether "fundamental aspects of

[Pansé's] program, including the flexible lab times,

student mentoring, and independent research" amounted to

misconduct.[34]  He therefore relied for his decision, at

least in part, on the College's "absence of notice to

[Pansé] to change his course or face discipline."[35]

        The Arbitrator's use of the term "arbitrary and

---

[33]    Exhibit K, p. 1.
[34]    Exhibit K, p. 19.
[35]    Id.

-**14**-

capricious" does not, in and of itself, support a finding
of a substantive due process violation.  Though the phrase
"arbitrary and capricious" may indicate an absolute lack of
rationality not susceptible to adjectives of degree, as
noted by the Court of Appeals, "[i]n the substantive due
process context, the requisite arbitrariness and caprice
must be stunning, evidencing more than humdrum legal
error."  Amsden, 904 F.2d at 754, n. 5. The failure to
provide Pansé with some warning that he must change his
course or face discipline was quintessential "humdrum legal
error."  Nothing in the Arbitrator's decision or, indeed,
in the Superior Court's review of that decision, suggested
otherwise.[36]

### D.  Pansé Was Not Deprived Of Free Speech.

Pansé claims that his August 2002 termination of
employment violated his right to free speech under the
First Amendment.  He claims that he was dismissed in
retaliation for what he said about "the nature and level of
education imparted by community colleges," "administrative
issues," and the "dire need for improvements."[37]  However,
the only evidence supporting this claim is not of a kind
protected by the First Amendment, nor is there any legally

---

[36]  Exhibit N, p.3.
[37]  Amended Complaint, ¶¶ 18 & 59.

-15-

sufficient evidence to find that Pansé's dismissal was
related to protected speech.

Whether a plaintiff's free speech has been violated
depends upon a three-part inquiry:

> (1) whether the speech involves a matter of
> public concern; (2) whether, when balanced
> against each other, the First Amendment
> interests of the plaintiff and the public
> outweigh the government's interest in
> functioning efficiently; and (3) whether the
> protected speech was a substantial or
> motivating factor in the adverse action
> against the plaintiff.

Jordan v. Carter, 428 F.3d 67, 71 (1st Cir. 2005) quoting

Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004)(noting that

these inquiries derive, respectively, from the Supreme

Court's decisions in Connick v. Myers, 461 U.S. 138 (1983);

Pickering v. Bd. of Educ., 391 U.S. 563 (1968); and Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274

(1977).  Pansé does not satisfy any of this three-part

inquiry.

The first part of the inquiry--whether the speech at

issue involves "a matter of public concern"--is not for a

jury but for the Court to decide as a matter of law.

Connick, 461 U.S. at 147-148; Hennessy v. City of Melrose,

194 F.3d 237, 246 (1st Cir. 1999).  The question must be

resolved on the basis of the "content, form, and context"

-16-

of the speech as revealed by the record as a whole.  To

qualify as a matter of public concern, the content of the

speech or expressive conduct must "provide members of

society with information necessary to make informed

decisions about government operations, to disclose public

misconduct, or to inspire public debate on a matter of

significant public interest." Meaney v. Dever, 326 F.3d

283, 289 (1st Cir. 2003) citing O'Connor v. Steeves, 994

F.2d 905, 913 (1st Cir. 1993).

    Pansé does not identify with any particularity any

protected speech.  There did appear in the Boston Globe two

articles dated October 4, 2001,[38] which he submitted at

arbitration.  The articles reported that Pansé had brought

suit against the College alleging that he had been removed

as chairman of the environmental technology department in

retaliation for his complaints that the College had allowed

course work to degenerate.[39]

    Pansé's departmental chairmanship would constitute

protected speech.  It was not calculated to inform or

generate debate on a matter of public concern but rather to

argue Pansé's own "personal interest." O'Connor v.

---

[38]    A copy of the Boston Globe articles are attached as
        Exhibit Q.

-**17**-

Steeves, 994 F.2d 905, 912 (1st Cir. 1993) quoting Connick, 461 U.S. at 148.  An employee does not have a viable retaliation claim if the speech touches only on matters of personal interest because "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency...in reaction to the employee's behavior." Id. at 147.  For if it were otherwise, anything an employee might say "would plant the seed of a constitutional case." Id. at 149.

With respect to the third and final part of the inquiry, Pansé has no evidence from which a reasonable jury could find that Pansé's protected speech was "a substantial or motivating factor" in his dismissal. Mihos, 358 F.3d at 102.  The evidence is entirely to the contrary.  The substantial and motivating factor was the receipt of complaints from five students regarding Pansé's teaching performance.[40]  Only after Pansé refused to cooperate, was an investigation was undertaken and the complaints substantiated.[41]

The timing of Pansé's dismissal does not support Pansé's contention of retaliation.  Retaliation can only be

---

[39]  Id.
[40]  Exhibit A.

-18-

inferred when an adverse employment action follows closely
on the heels of protected activity.  Such an inference is
weakened and collapses over time.  Oliver v. Digital Equip.
Corp., 846 F.2d 103, 110 (1st Cir. 1988)(no causation shown
when firing occurred more than two years after filing of
charge).  Here, the allegedly protected speech was
published in the Globe at least two years prior to the
defendants' decision to investigate and then to terminate
Pansé's employment.

> **E.   Defendants Are Entitled To Qualified Immunity.**

Even if the defendants were determined to have
violated Pansé's right to due process and free speech, the
defendants would be entitled to qualified immunity and not
be individually liable.  Qualified immunity shields
government actors from damages based on their conduct
"unless a reasonable official would have known, in light of
clearly established law, that he was acting
unconstitutionally." Jordan, 428 F.3d at 71 (citations
omitted).  Immunity is the norm in public employee First
Amendment cases because the constitutional question
requires fact-intensive balancing, making it unlikely that
a reasonable official " must have known that he was acting

---

**41**   Exhibits B and C.

**-19-**

unconstitutionally." <u>Dirrane v. Brookline Police Dep't.</u>,
315 F.3d 65, 71 (1st Cir. 2002).

Qualified immunity depends on yet another tripartite
test. <u>Mihos</u>, 358 F.3d at 102. A court must first consider
whether the plaintiff's allegations, if true, establish a
constitutional violation. <u>Id.</u> Second, the court must
determine whether the right allegedly violated was clearly
established at the time of the challenged conduct. <u>Id.</u>
Finally, if the prior two questions are answered
affirmatively, the court must determine "whether a
similarly situated reasonable official would have
understood that the challenged action violated the
constitutional right at issue." Id. If the final answer is
"no," the defendant or defendants will be entitled to
qualified immunity notwithstanding any constitutional
injury to the plaintiff. <u>Jordan</u>, 428 F.3d at 72.

Pansé has not established a constitutional violation
for the reasons set forth above, pp. 7-19. However, even
if a constitutional violation were conceded, the defendants
would still be entitled to qualified immunity.

In the specific circumstances of this case, Pansé
cannot meet the third part of the test. Even if it were to
be conceded that <u>as a general matter</u> a professor could not

-**20**-

be dismissed for failing to supervise his laboratory or
teach the requisite number of hours and that a professor
can speak with impunity about a matter of public concern,
the right is clear in the specific context of this case.
The qualified immunity analysis "'must be undertaken in
light of the specific context of the case, not as a broad
general proposition.'"  Suboh v. Dist. Attorney's Office of
Suffolk Dist., 298 F.3d 81, 93 (1st Cir.2002) quoting
Saucier v. Katz, 533 U.S. 194, 201 (2001).  It is rare for
immunity to be denied when the constitutional right at
issue involves weighing various factors because "the
Pickering balancing is "'subtle, yet difficult to apply,
and not yet well defined,'" Pike v. Osborne, 301 F.3d 182,
185 (4th Cir.2002)(citation omitted), and that,
consequently, only in the extraordinary case will it have
been clearly established that a public employee's speech
merited constitutional protection.  Jordan, 428 F.3d at 74
(citations omitted).

   In short, it matters not whether the defendants could
have provided Pansé with better written advance notice as
to what was expected of him or subjected him to progressive

-21-

discipline rather than outright dismissal.[42]  It also does
not matter whether the Globe articles could be construed to
be speech of public concern which the defendants should
have recognized.  The defendants would still come within
the ambit of qualified immunity which has been held to
sweep so broadly that "'all but the plainly incompetent or
those who knowingly violate the law' are protected from
civil rights suits for money damages."  Hegarty v. Somerset
County, 53 F.3d 1367, 1373 (1st Cir. 1995) quoting Hunter
v. Bryant, 502 U.S. 224, 227 (1991)).

**IV.  Conclusion**

        The defendants are entitled to summary judgment as a
matter of law because Pansé received all procedural process
that was his due, he was not subjected to any violation of
substantive due process but at most mere legal error, and
his speech was not about a matter of public concern nor was
it a substantial or motivating factor in the termination of
his employment.  Moreover, even if Pansé had suffered
constitutional error, the defendants would be protected by
qualified immunity because such error would not have been

---

[42]    Exhibit B, p. 18.

**-22**-

apparent to reasonable officials in the specific

circumstances of this case.

LINDSAY NORMAN, PAULA GASTENVELD,
LAURIE TAYLOR, GHAZI DARKAZALLI, THOMAS
SABBAGH, the MBCC BOARD OF TRUSTEES,
JUDITH I. GILL, PETER H. TSAFFARAS, the
MASSACHUSETTS BOARD OF HIGHER
EDUCATION, JOHN A. KING, MITT ROMNEY,
ANDREW SCIBELLI, and HAIDEE MORRIS, ,
in their individual and official
capacities,

By their Attorney,

THOMAS F. REILLY

ATTORNEY GENERAL


/s/Charles M. Wyzanski_____
Charles M. Wyzanski
BBO # 536040
Assistant Attorney General
One Ashburton Place
Boston, Massachusetts 02108
617-727-2200