## AFFIDAVIT OF PLAINTIFF

I, Chandrakant S. Pansé, do hereby state that the following is true to the best of my knowledge and belief:

1. The Office for Civil Rights in the Department of Education of the Federal Government issued a written warning in 2001 that in view of a Title VII investigation by said Office regarding a grant from the National Science Foundation (NSF). The issue involved reluctance or failure of MBCC to administer federal funds, obtained in part through the efforts of the plaintiff herein in his capacity as the Co-Principle Investigator for said NSF grant, for the betterment of minority students in the education in science of such students. Plaintiff was covered under said Warning, and cooperated fully with two Federal probes of MBCC.

2. The defendant President of MBCC had told the plaintiff that MBCC was upset with the plaintiff's exercise of his protected activities and was going to watch the plaintiff specifically.

3. The charges against the plaintiff for the purposes of said dismissal amounted merely to the fact that during the Spring 2002 semester the plaintiff taught one research-type biotechnology rotation course per long-standing practices of open laboratory and peer-mentoring methods, as necessary for the research environment of the program.

4. The plaintiff has taught numerous other courses at MBCC, and has also been teaching in a biotechnology program at Boston University School of Medicine continuously since 1990.

5. MBCC did not state any charges whatsoever regarding any courses taught by the plaintiff at MBCC other than the one biotech rotation research course in question here.

6. At the beginning of a hearing on July 29-30, 2002 pursuant to a Collective Bargaining Agreement, where the plaintiff could be dismissed only for just cause, the attorney for

grievant/plaintiff charged that the hearing officer, Norman, as defendant in lawsuit brought by the grievant/plaintiff and pending at that time in the State Superior Court, Norman was incompetent to judge the grievant fairly.

7. Undisputed evidence at said hearing established that said biotech rotations had been designed and taught as described by the plaintiff from the inception of said courses in 1993.

8. Undisputed evidence at said hearing also established that college officials had acknowledged under oath, during depositions in said action in the Superior Court, that they were aware of, and approved of, teaching methods as described by the plaintiff for biotech rotations.

9. At said hearing, some defendants claimed under oath that they had told the plaintiff to change said teaching methods; plaintiff asserted under oath that no such directive ever existed.

10. There does not exist a single piece of evidentiary paper anywhere to substantiate claims by some defendants that they told the plaintiff to change said teaching methods; accounts of meetings written by some defendants themselves, where said meeting were called and conducted by said defendants, demonstrate that no defendant ever told the plaintiff to change said teaching methods.

11. Plaintiff testified at said hearing that he would have undoubtedly changed said teaching procedures had he received any directive whatsoever to so change.

12. After the Plaintiff was terminated, he repeated said assertions (11, above) at an appeal to the Chancellor's designee Tsaffaras, this appeal being relatively a brief, perfunctory affair with no reporter present and no significant notes taken by anyone present.

13. Plaintiff routinely and till close to the end of his employment at MBCC expressed his concerns regarding the needs for improvements in standards of education at community colleges in general and MBCC in particular; this led to discussions in departmental faculty meetings, with

MBCC administrators present, and close (days or weeks) to termination of Plaintiff's MBCC employment. MBCC was opposed to such initiatives as new higher lever courses.

14. MBCC challenged the Plaintiff's claim for unemployment benefits on grounds that Plaintiff was fired for misconduct. The Division of Unemployment Assistance of the state ruled on May 6, 2003, informing the state that the state's actions were wrongful.

15. Defendants refused early dates in 2002 proposed by the Arbitrator where arbitration is supposed to be a speedy and inexpensive process; the Defendants dragged out the arbitration for as long as they could, refusing to accept any date for a six month stretch in the middle of the arbitration hearing.

16. While arbitration was in progress, it became obvious to the Arbitrator that the employer had no case and the Arbitrator said so to counsels on 4-17-2003 and 2-4-2004.

17. The Arbitrator ruled on November 9, 2004 that the employer had no justification whatsoever to even impose any discipline on the plaintiff, much less discharge him.

18. The Office of the Attorney General for the Commonwealth conveyed its position on December 8, 2004 by e-mail to the plaintiff that the plaintiff should go back to his work now.

19. Defendants failed to honor said opinion of the Office of the Attorney General.

20. Community Colleges are by law required to accept all students with a high school diploma or a GED, no matter how ill-prepared for college-level work; the average age of an MBCC student has approached 30 when the plaintiff was employed at MBCC, many such students being single mothers, etc.

21. Undisputed evidence at the hearing at MBCC on July 30, 2002, established that the biotechnology program at MBCC, as built by Professors Jackson and the plaintiff herein, had produced unbelievable success stories out of a community college student population.

-4-

22. There exists evidence which would tend to demonstrate that each of the MBCC administrators lied under oath during the processes herein.

23. At a conference on July 12, 2006, the counsel for the Defendants lied to the Court that the Plaintiff's family medical insurance had been reinstated where no such reinstatement occurred until weeks later.

24. Plaintiff believes, based upon reasonable enquiry, that the qualifications and experiences of various state officials as he has claimed, to be true.

25. The issue in the state litigation pending at the time of Plaintiff's termination in 2002 was Plaintiff's First Amendment rights. *Pansé* v. *Van Winkle* et al., NOCV 99-287 (Norfolk Superior Court.)

Signed under pains and penalties of perjury, this 13th Day of Nov. 2006,

Chandrakant S. Pansé