UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-11658-RWZ

CHANDRAKANT S. PANSE

v.

LINDSAY NORMAN, et al.

MEMORANDUM OF DECISION

July 26, 2007

ZOBEL, D.J.

I.    **Background**

Plaintiff Chandrakant S. Panse ("Panse"), pro se, began teaching biotechnology and related courses at Massachusetts Bay Community College ("MBCC") in 1993 and received tenure in 1999.  Three years later, MBCC initiated an investigation in response to student complaints about plaintiff that resulted in a recommendation of his dismissal by Lindsay Norman ("Norman"), MBCC president.  After a hearing, MBCC terminated plaintiff's employment.  Plaintiff thereafter succeeded in arbitration initiated on his behalf by the Massachusetts Community College Council (the "MCCC") under the terms of the collective bargaining agreement (the "CBA") governing his employment and was reinstated.

Contemporaneously, plaintiff filed the instant action against Norman and several other MBCC employees (collectively, "MBCC defendants"), the Chancellor and Vice

Chancellor of the Massachusetts Board of Higher Education (together, "BHE defendants"), Governor Mitt Romney, and John King, Commissioner of the Division of Unemployment Assistance ("DUA").  He filed an Amended Complaint which set forth the following claims under 42 U.S.C. § 1983 against MBCC defendants, BHE defendants and Governor Romney, all in their personal capacities: Count I, assault and battery; Count II, intentional infliction of emotional distress; Count III, violation of certain rights under the United States and Massachusetts constitutions; Count IV, defamation; and Count VII, violation of certain unnamed additional duties.  Plaintiff alleged assault and battery in Count V and conversion and invasion of privacy in Count VI, both under 42 U.S.C. § 1983, against Laurie Taylor, individually and personally, as the MBCC defendant who served as Director of Personnel and Affirmative Action Officer.  Plaintiff also accused Mr. King and DUA in Count VIII of violating a duty for prompt and timely processing of benefits.  Count IX does not contain additional allegations but, instead, identifies further remedies sought by plaintiff in addition to those listed in each of Counts I through VIII.

On September 16, 2005, this court dismissed all claims against defendants except Count III.  (Docket # 30.)  Defendants now move for summary judgment with respect to that claim.  (Docket # 53.)

## II.    Pending Motions

Now pending is defendants' motion for summary judgment.  In denying the motion to dismiss (or, in the alternative, for summary judgment), I noted "[i]t is clear from the parties' briefs that factual disputes underlie all of [the Count III] claims.

Because summary judgment is thus inappropriate at this stage of litigation, defendants' motion is denied as to Count III." (Docket # 30.) However, after the summary judgment motion hearing held in October 2006, it is now apparent that any disputes as to the facts have evaporated. In 1993, Massachusetts Bay College hired plaintiff and in 1999 he was granted tenure. In March 2002, after receiving student complaints about plaintiff, the college initiated an investigation at the conclusion of which the College's Vice President for Academic Affairs recommended to defendant Lindsay Norman, then-President of MBCC, that Panse be dismissed. Plaintiff was afforded a formal hearing pursuant to the CBA, during which he was represented by counsel. On August 2, 2002, Norman terminated plaintiff. Plaintiff appealed his dismissal to Judith Gill, Chancellor of Higher Education under the CBA. Plaintiff's appeal was denied and his dismissal upheld.

In a separate action, the MCCC Union sought arbitration on plaintiff's behalf. The arbitrator concluded that plaintiff's dismissal was procedurally flawed because the college failed to first give "notice [to plaintiff] that he must change his program or face discipline and discharge." (Docket # 56-3, Award of Arbitrator, Case No. 1139-2407-02.) The arbitrator then remanded the matter to the President of the College for reassessment of the decision. Norman's successor reaffirmed plaintiff's dismissal.

On December 15, 2004, the union again took the matter to the arbitrator who found that plaintiff's dismissal was arbitrary and capricious and ordered that plaintiff be reinstated. The college sought to vacate the arbitrator's award, but the Massachusetts Superior Court affirmed the award and remanded to the arbitrator. See Massachusetts

Bd. of Higher Educ./MBCC v. MTA/Massachusetts Community College Council, Civ.

No. 05-0696-H, 2005 WL 2292643 (Suffolk Super. Ct. Sept. 14, 2005).  After remand to

the arbitrator, the college reinstated plaintiff and paid him back pay and benefits.

Plaintiff now seeks emotional distress and punitive damages for alleged violations of

his due process rights.

       To make out a claim for procedural due process, plaintiff must demonstrate that

"[plaintiff] had a property interest defined by state law; and (2) that defendants, acting

under color of state law, deprived [him] of that interest without adequate process."

Licari v. Ferruzzi, 22 F.3d 344, 347 (1st Cir. 1994).  There is no dispute here that

plaintiff had a property interest in his position or that the college is a state actor.  The

issue is what measure of process he was due.  "[T]he ultimate conclusion about

procedural adequacy . . . turns on the full set of pre-and post-deprivation procedures

available."  O'Connor v. Pierson, 426 F.3d 187, 197 (2d Cir. 2005).

       It is well established that a tenured professor who faces the possibility of

dismissal is at least entitled to "[n]otice and an opportunity to be heard" prior to

termination.  Newman v. Commonwealth of Massachusetts, 884 F.2d 19, 23 (1st Cir.

1989); see also Collins v. Marina-Martinez, 894 F.2d 474, 480 (1st Cir. 1990) ("[] a

tenured employee is entitled to oral or written notice of the charges against him, an

explanation of the employer's evidence, and an opportunity to present his side of the

story") (internal citations omitted).  Here, plaintiff cannot demonstrate that he was

denied adequate process.  He was provided with a formal statement of the charges

against him, he had the opportunity to call witnesses and present testimony.  He was

4

given a written decision and afforded the opportunity to appeal.  Plaintiff points to no case holding that the failure to provide advance warning or progressive discipline prior to termination, without more, violates constitutional due process.

Plaintiff further contends that the process was inadequate because: (1) Norman was biased in that he was a defendant in a separate pending state court lawsuit brought by plaintiff; and (2) Norman had decided to dismiss plaintiff prior to the commencement of the hearing, as evidenced by a letter dated June 2, 2002.  (Docket # 56-3, Pl.'s Mem. in Supp. of Opp. to Def.'s Mot. for Summ. J., Ex. B.)  Plaintiff's arguments are unpersuasive.  His dismissal was affirmed by Norman's successor, Judith Gill, who was an independent party (and not herself the subject of a lawsuit by plaintiff).  Moreover, plaintiff does not dispute that he was afforded an adequate post-deprivation remedy, viz., the CBA arbitration.  Indeed, courts have routinely held that such procedures do not violate due process.  See Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 102 (1st Cir. 2002) ("the full arbitration hearing afforded by the collective-bargaining agreement was more than sufficient to satisfy the requirement for a post-deprivation hearing").

Nor can plaintiff establish a violation of his substantive due process rights.  The college's dismissal of plaintiff without first providing progressive discipline does not shock the conscience.  See, e.g., Amsden v. Moran, 904 F.2d 748, 754 (1st Cir. 1990) ("[] before a constitutional infringement occurs, state action must in and of itself be

egregiously unacceptable, outrageous, or conscience-shocking").[1]

Finally, plaintiff has alleged that he was terminated in retaliation for exercising his free speech rights regarding, inter alia, "the nature and level of education imparted by community colleges." (Docket # 21, Complaint ¶ 18.) In order to prevail on a claim that a governmental employer retaliated against an employee for speaking out, a plaintiff must establish a prima facie case that: (1) the "speech involves a matter of public concern;" (2) the "First Amendment interests and the public outweigh the government's interest in functioning efficiently;" and (3) the "protected speech was a substantial or motivating factor in the adverse action against the plaintiff." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

Plaintiff contends that his speech was a matter of public concern, and that the balance of interests weighs in his favor; the college disputes both contentions. I need not resolve this dispute. Here, plaintiff cannot demonstrate that his dismissal was motivated by the protected speech. See Gomez v. Pellicone, 986 F. Supp. 220, 230-31 (S.D.N.Y. 1997) (granting defendant's motion for summary judgment where plaintiff failed to establish a prima facie case that termination was the result of her speech; nor could plaintiff "rebut the defendant's legitimate, nondiscriminatory justifications for the challenged employment actions"). Even accepting the facts as he has alleged them,

---

[1] Because I find that there was no procedural or substantive due process violation, I need not address defendants' contention that they are entitled to qualified immunity. See Cotnoir v. Univ. of Maine, 35 F.3d 6, 10 (1st Cir. 1994) (government actors not subject to liability where "a reasonable official could have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct ").

his statements regarding the quality of education at the college were made two years before his termination.  It is axiomatic that retaliation may only be inferred where the dismissal follows in close proximity to the protected speech.  <u>See</u> <u>Oliver v. Digital Equip. Corp.</u>, 846 F.2d 103, 110-11 (1st Cir. 1988) (affirming the district court's grant of summary judgment for the employer on plaintiff's retaliation claim where plaintiff failed to establish that the speech was a motivating factor in plaintiff's dismissal).  Moreover, there is no evidence in the record that Norman was aware of plaintiff's allegedly protected speech.

III.    **Conclusion**

        Accordingly, defendants' motion for summary judgment (Docket # 51) is ALLOWED.  Judgment may entered for defendants.

        July 26, 2007                                  /s/Rya W. Zobel
          DATE                                       RYA W. ZOBEL
                                            UNITED STATES DISTRICT JUDGE